JOHN H. ASHTON and Others, Appellants, v. THE CITY
OF ROCHESTER and Another, Respondents.

*Municipal corporations — a resolution to reconsider an ordinance does not repeal
it — an ordinance passed over the veto of a mayor cannot be reconsidered —* man-
damus *to compel the performance of a public duty — repeal of any ordinance.*

The charter of the city of Rochester (chap. 14, Laws of 1880) makes its common
council the legislative branch of the government, and it alone can determine the
necessity of a public improvement. It creates an executive board, which has
sole power to let contracts, except such as are by law directed to be otherwise
made.

The common council of Rochester passed an ordinance for the improvement of
an avenue in said city, which was vetoed by the mayor and subsequently passed
by the common council over his veto. The executive board was about to let
the contract when the common council adopted a resolution to reconsider the
adoption of the ordinance. This resolution was vetoed by the mayor and was
afterwards passed over his veto. Thereupon the executive board refused to
proceed further.

*Held,* that the resolution to reconsider the ordinance, followed by no further
action, did not repeal it.

That after the ordinance had been once passed over the mayor's veto, the common
council had no further power to reconsider it.

That a writ of *mandamus* was the proper remedy to compel the performance of a
public duty, where it clearly appeared that there had been a neglect or refusal
to perform such duty.

*Semble,* that the common council had power, except where it was passed over the
mayor's veto, to repeal any ordinance passed by it.

APPEAL by the plaintiff, John H. Ashton and eighteen others,
taxpayers of the city of Rochester, from a judgment, entered in the
clerk's office of Monroe county on the 8th day of January, 1891,
dismissing their complaint on the merits, with costs, after a trial
before the court at a Special Equity Term in said county.

*Parker & Drake* and *John Van Voorhis,* for the appellants.

*Henry J. Sullivan,* for the respondents.

PER CURIAM:

This is an appeal from a judgment, entered in Monroe county on
the 8th day of January, 1891, on the decision of the Special Term
dismissing the plaintiffs' complaint at the trial upon the merits.

The plaintiffs bring their action not only for themselves, but also in behalf of all others similarly circumstanced who may come in as parties, to vacate an assessment for paving Lake avenue, in the city of Rochester, from Lyell avenue to Driving Park avenue, with asphalt. The letting of the contract for such improvement was in accordance with a writ of *mandamus*, issued by the Special Term of this court on the 25th day of April, 1889, whereby, at the instance of certain residents of this part of Lake avenue, none of whom are parties to this action, the executive board of the city, to whom, by the charter (Laws of 1880, chap. 14), the power of letting contracts made in pursuance of ordinances passed by the Common Council is exclusively given, was directed to be made according to law. On the hearing of the motion for that *mandamus*, all the questions involved on this appeal were fully considered by the court in an opinion delivered by Mr. Justice DAVY, which is as follows:

DAVY, J. This is a motion for a peremptory *mandamus* requiring the executive board of the city of Rochester to proceed to let, in the manner prescribed by law, a contract for the improvement of Lake avenue, under final ordinance No. 3568, passed by the common council of the city of Rochester on the 26th day of December, 1888, which ordinance was vetoed by the mayor of said city, and was subsequently unanimously passed by the common council over his veto. The ordinance was then certified by the city clerk to the executive board, which body proceeded under it and obtained bids for the contract, and was about to let the same when, upon March 19, 1889, at the first regular meeting of the common council, after the ordinance was passed over the mayor's veto, a resolution was adopted by the Board to reconsider the adoption of the ordinance. That resolution was also vetoed by the mayor, and on the twenty-eighth day of March the council passed it over the mayor's veto. Thereupon the executive board refused to make a contract for the improvement, upon the ground that the resolution of the common council to reconsider the ordinance deprived it of that right.

The power vested in the common council under the charter to pass ordinances and to repeal them, and whether the ordinance in question was repealed must be first considered and passed upon before reaching the question as to whether the application for a

*mandamus* in this case shall be granted or refused. The city charter provides that the common council shall have the management and control of the fiscal and prudential affairs of the city, and may make such ordinances and by-laws relating to the same as it shall deem proper and necessary. It also provides that the board shall not ordain any work or improvement, the expense whereof is to be defrayed in whole or in part by local assessment, except upon the petition of a majority of the owners of the property to be assessed therefor, unless three-fourths of all the members elected to said council vote therefor after allegations have been heard; that before the common council shall determine to make any such public improvement, it shall cause an estimate therefor to be made and entered in its minutes, describing the portion and part of the city which it deems proper to assess for the expenses of such improvement; and it shall cause a notice to be published daily in at least two of the daily newspapers printed in the city of Rochester for four days, which notice shall specify such improvement, the estimated expense thereof, the amount, if any, to be paid from the public treasury, and the portion or part of the city to be assessed for the rest of the expenses, and shall require all persons interested in the subject-matter of such improvement to attend the said council at a time appointed in such notice. At the time appointed the common council shall proceed to hear the allegations of the persons interested in the subject-matter of such improvement, and after hearing the same shall make such further order in respect to such improvement as it shall deem proper. The charter also provides that the city treasurer shall ascertain the cost of the improvement which has been theretofore ordered by the common council, and report the same to that body, who shall adjust the same and order an assessment to be made; that upon the return of the assessment-roll, when completed, the aldermanic council may confirm it or set it aside, or order a reassessment in its discretion.

The charter also provides that the executive board shall have sole power to let all contracts to be made in pursuance of any ordinance, except such as are by law directed to be otherwise made, and shall superintend the execution of the same. It shall have the superintendence and control of all work ordered by the common council, and shall have control of the construction, improvement, repair and

cleaning of the streets, alleys, etc., and shall have control of the expenditure of all funds therefor, but whenever the expense of any such work or improvement shall be required to be defrayed by local assessment, the common council shall alone have power to pass ordinances therefor. That after the common council shall have directed an improvement to be made, the executive board shall then advertise in one or more of the daily newspapers of the city, for at least ten days before-letting the contract, for sealed proposals to do the work, which proposals must be accompanied by a bond signed by at least two responsible sureties, conditioned that the person making the bid, if it is accepted by the executive board, will perform the work mentioned in such proposal, and fulfill any contract that may be made with him. But the board may let any contract it deems for the best interest of the taxpayers. The executive board, however, is required to publish all bids received by it and the persons to whom the contracts are awarded.

It will be seen by the provisions of the charter that the common council alone has power to pass ordinances for the improvement of streets, when the expenses to be incurred therefor are defrayed by local assessment. It is conceded that the ordinance in question, when passed, received the requisite number of votes; that it was vetoed by the mayor, and again reconsidered by the common council and passed over his veto. The learned counsel for the relators contends, first, that the municipal council had no legal right to repeal the ordinance; and, second, that what it did do was not a repeal thereof. Upon these two points hinge not only the power of the executive board to proceed and let the contract for the improvement of the avenue, but the duty of the court to entertain and grant this motion.

The common council of the city of Rochester is the legislative branch of the city government, and, acting for the taxpayers in its legislative deliberations, can alone determine the necessity of a public improvement, and when and how that improvement shall be made.

I am unable to concur in the position taken by the learned counsel for the relators, that the ordinance in question cannot be repealed. In this country nearly all legislative acts are repealable. The most injurious consequences would result if a contrary precedent were established. To allow ordinances to be placed beyond

repeal would not only establish, but fix a principle by which the property of our citizens might be depreciated in value, and the growth of the city impeded and its prosperity destroyed. Nuisances might multiply by reason of the inability of the board of aldermen to repeal. No legislative body in this country can so part with its power by any proceeding as not to be able to continue the exercise of it. It can and should exercise its powers as often as the public interest requires, but in exercising those powers it must act legally and adhere in its deliberations to the well-settled parliamentary law governing legislative bodies. The American authorities all hold that a statute can be repealed, but it can only be repealed by an express provision of a subsequent law, or by necessary implication. A repealing act is a total abrogation of the law repealed, but rights acquired and which become vested under the law before its repeal, are not affected by the repealing act.

It is equally clear that after the common council decides upon an improvement it devolves upon the executive board to proceed without delay and let the contract. That board is clothed with no discretionary power. Its duty is to execute the laws pertaining to the improvements of streets after the common council have, by ordinance, vested it with authority to do so. For the court to hold that the executive board, independent of the common council, can and must proceed under the charter and let the contract, even though the ordinance has been repealed, would be assuming a position which, in my judgment, could not legally be sustained. It was the intent of the legislature, as expressed in the charter, to confine the exercise of this power to the common council, the members of which are elected by the people, and who are responsible to those whose property they are allowed to tax for public improvements.

Ordinances for the improvement of streets, being among the most important acts of the municipality affecting the interests and rights of the taxpayers, should be strictly construed, and it is, therefore, essential to their validity that they should be passed by the municipal council when duly assembled in the manner prescribed by the charter; and such ordinances can only be repealed by the act of the legislative body that created them. A repealing ordinance is a total abrogation of the law repealed. The suspension of an act or an ordinance cannot be construed to be a repeal of it.

It is highly important to the taxpayers of the city that these pro-ceedings in all respects be regular, for the reason that the city at large is held responsible and liable by the contract which may be made for the improvement of any street; but the common council, under the charter, may reimburse the city in such an amount as may be decided upon by that body by means of local assessment. But if any of the proceedings relative thereto shall prove to be invalid, then the city at large will be precluded from reimbursing itself by means of local assessments.

I now come to the second point raised by the counsel for the relators, which is, has the ordinance been repealed? If it has been, it was repealed under the motion or resolution by Alderman Wil-liams, which reads: "That action on the final ordinance for Lake avenue asphalt improvement, No. 3568, published at page 336, current proceedings, and adopted January 4, 1889, be reconsidered." Does the adoption of this resolution rescind the ordinance? If it does, then the executive board is powerless to proceed any further by way of letting the contract and improving the avenue under the ordinance? In my opinion the vote which was taken upon Alderman Williams' motion did not repeal the ordinance. The vote to reconsider, is to consider it again, which the municipal council in this case omitted to do, which left the ordinance unrepealed.

It is usual in legislative bodies, especially the house of repre-sentatives, to regulate by special rule the time, manner and by whom a motion to reconsider may be made; that it shall be made only on the same or succeeding day, and by a member who voted with the majority, and such motion shall take precedence of all other ques-tions except a motion to adjourn. A motion to reconsider, if made in time, may be entertained if the house has control of the bill. It is customary, however, pending a motion to reconsider a vote on the passage of a bill, for the speaker to refrain from signing it, even if reported by the committee on engrossed bills, until the motion to reconsider is disposed of; and when the bill has been sent to the senate, it is usual in such cases to send a message to that body requesting its return in order that the motion to reconsider may be properly entertained. And where a bill has been ordered to be

engrossed, it is not in order to move a reconsideration thereon until the order of engrossment has first been reconsidered.

The ordinance in question, when passed over the mayor's veto, became a municipal law, and was as binding upon the people of the city of Rochester as the statute laws are binding upon the people of the State. After a bill has passed the legislature and becomes a law, it would be contrary to all parliamentary law and precedent for that body to attempt to reconsider it. The act might be repealed, but it could not be reconsidered. The ordinance in question may be repealed, but it cannot be reconsidered, for the reason that when it was passed over the mayor's veto it became a law, and thereby passed beyond the control and power of the municipal council to reconsider it. According to the uniform parliamentary practice of legislative bodies, where a motion to reconsider has been passed in the affirmative, the question immediately recurs upon the question reconsidered. The question reconsidered was never acted upon in this case; therefore, if the common council had the power to reconsider the ordinance, it never rescinded it, because the question reconsidered was never acted upon.

There is another fatal point in this case, which is, that the ordinance, when passed over the mayor's veto, could not be again considered. It is a rule well settled by parliamentary law that a vote on the reconsideration of a vetoed bill cannot be reconsidered again. (Barclay's Constitutional Manual, pages 197, 199; American Manual of Parliamentary Law, by George T. Fish, 90.) Years ago, in the house of representatives, a motion to reconsider could not be entertained after the bill was disposed of, if another subject had risen and was pending before the house, until that subject was acted upon. It was then often too late to make the motion, for the reason that the bill had been sent to the senate. It was under this practice that Mr. Randolph was unable to move a reconsideration of the settlement of the celebrated "Missouri question."

We concur in the foregoing opinion. It follows that the judgment appealed from should be affirmed.

Present — DWIGHT, P. J., and MACOMBER, J.

Judgment appealed from affirmed, with costs.