(30 Misc. Rep. 368.)

### BASSELIN et al. v. PATE, Commissioner, et al.

(Supreme Court, Special Term, Lewis County. January, 1900.)

1. TOWN BOARD—BRIDGES—CONTRACT TO CONSTRUCT—CONSENT.

Where a town board at a regular meeting decided that a bridge was unsafe, and voted to build a new one, and then voted to adjourn for one week, it amounts to a consent, within the Highway Law, § 10, authorizing the commissioner of highways of the town to rebuild a bridge without the consent of the town board; and their action cannot be reconsidered or corrected at a subsequent meeting, so as to invalidate a contract let in good faith in pursuance thereto, and before any subsequent action had been taken by them.

2. SAME—RESOLUTION—VOTE TO RECONSIDER—EFFECT.

A vote by a town board to reconsider a former resolution is not sufficient, without further action, to rescind it, or prevent it from being followed.

3. SAME—HIGHWAY COMMISSIONER—CONTRACT—EVIDENCE OF FRAUD AND COLLUSION—SUFFICIENCY.

A town board passed resolutions condemning an old bridge, and authorizing the construction of a new one by the highway commissioner. An agent of the bridge company to whom the contract was let and the commissioner spent the night of the day in which that action was taken at the same hotel, and early next morning started out to secure legal advice as to the commissioner's power to contract. He thereafter let the contract binding the town to pay $500 more for the bridge than the price at which it was privately offered to certain of the town board, without the commissioner's knowledge, if action was taken immediately on the day of their meeting. His expenses on the trip to consult a lawyer were paid by the representative of the bridge company, and a bond was executed to him to indemnify him against personal liability. The bridge contracted for was suitable, and well worth the price to be paid for it, and the commissioner received no personal advantage from the contract. *Held* not to show fraud, collusion, or bad faith on the part of the commissioner.

4. SAME—ACTION FOR INJUNCTION—PRESUMPTION.

An action of waste, in which taxpayers of a town seek to restrain work under a contract for the construction of a bridge on grounds that it was executed without proper authority, and was tainted by fraud and bad faith on the part of the highway commissioner, assumes that a contract in form has been made for the work, but that it is subject to defects which entitle plaintiff to restrain action under it, and hence plaintiff cannot urge as a ground for relief that the contract was never completed.

Injunction by Theodore E. Basselin and others against Francis
E. Pate, as commissioner of highways of the town of Crogan, and
the Owego Bridge Company. Complaint dismissed.

This action was begun by plaintiffs as taxpayers to prevent the construction
by the defendant bridge company, under a contract with defendant Pate, of a
bridge over a river in such town, and is brought as an action to restrain waste.
Under the alleged contract the bridge was to be constructed for $3,500, and the
contract purported to be made under section 10 of the highway law, which, at
the time of the contract, provided that: "If any highway or bridge shall at
any time be damaged or destroyed by the elements or otherwise or become un-
safe, the commissioners of highways of the town in which such highway or
bridge may be situated may, with the consent of the town board, cause the
same to be immediately repaired or rebuilt," etc. On the submission of the
case, relief was asked for plaintiffs on three grounds: (1) That the town
board did not consent to the building of the bridge, as required by statute;
(2) that the contract for its construction was invalid, because it was not com-
pleted; and (3) that it was corrupt, and made to defraud the town.

Elon R. Brown, for plaintiffs.
Oscar B. Glezen, for defendant Bridge Company.
W. A. Purcell, for defendant Pate.

HISCOCK, J. I think that the following facts may be fairly re-
garded as established by the evidence in this case, many of them
without contradiction, namely: That prior to April 24, 1897, the
old bridge at the point in question had become unsafe; that on
said day, at a meeting of the town board duly held, it was by
specific vote decided that said bridge was unsafe, and it was voted
to build a new bridge of iron across the Beaver river at the point
in question; that it was then voted that the board adjourn for one
week; that the agent of the defendant bridge company appeared
at said meeting of the town board, and attempted to secure action
by it in favor of the construction by his company of one of its
bridges, showing illustrations of various kinds of bridges; that,
among others, he exhibited a picture or illustration of a bridge to
be erected at a cost of $3,500; that subsequently, to one or more
members of the board, privately, he stated, in substance, that if the
board would take action favorable to the construction of the bridge
by his company, it would erect the $3,500 bridge for $3,000, but this
did not take place in the presence of, and, so far as the evidence dis-
closes, was not known to, the defendant commissioner; that, after
spending the night at the same hotel, early the next morning the
agent of the bridge company and the defendant commissioner went
to consult lawyers with reference to the right of the latter to make
a contract for the construction of the bridge; that they found one
lawyer, whose advice was not sufficiently definite or certain, and
failed to find another one whom they sought, and finally, without
further legal advice, the contract in question was made between
the agent and the commissioner; that said contract provided, as
hereinbefore stated, for the construction of a bridge for $3,500, and
it was on its face indefinite and uncertain in some respects, but at
the time of its execution it was agreed that a "strain sheet" should
be furnished by the bridge company to the commissioner, which was
done a few days thereafter, although the same has not been formally

annexed to the contract. The agent of the bridge company paid the expenses of the highway commissioner upon the trip to seek advice just mentioned, and also gave him an undertaking to protect him against personal liability, but the main purpose of the latter was to guard against liability by reason of a resolution theretofore passed by the town board ·that no job should be let for more than $15 without advertising for bids. The bridge agreed to be constructed was fairly worth the sum provided. Subsequently, and on May 4, 1897, the town' board again met, and a motion was adopted that the minutes of its prior meeting hereinbefore referred to, which read, "That this board adjourn for one week," should be so amended as to read, "That this board adjourn until the 4th day of May, so that the board can get counsel, and find out what their duty is in regard to building bridges and letting jobs for bridges." A motion was also adopted that the resolution to build a new bridge adopted at the prior meeting be reconsidered, and also resolutions were adopted in effect repudiating the contract between the two meetings made by the highway commissioner with the defendant bridge company.

In support of his first contention,—that no consent of the town board to the building of the bridge was given as required by statute,—I do not understand that plaintiffs' counsel claims that the proceedings taken by the town board at its first meeting in effect determining that the old bridge was unsafe, and that a new bridge of iron should be built, did not, standing alone and by themselves, constitute a sufficient consent under the statute to enable the contract in question to be made. I do not think that he could successfully so claim. The statute does not prescribe or require any particular form of consent by the town board to the rebuilding of a bridge in such a case as this. It was the evident purpose of the statute that a highway commissioner should not be permitted to create obligations against the town for the rebuilding or repairing of bridges upon the theory that they were unsafe, until the town board should have passed upon that question, and determined in favor of the repairs or rebuilding. The town board in question' did fully and distinctly decide upon these questions, namely, that the old bridge was unsafe, and that a new bridge should be built, The counsel seeks to sustain this proposition rather by connecting the proceedings of the town board at its second meeting with those taken at the first one, and by making them a continuation thereof; by arguing that the proceedings at the first meeting were inchoate, or tentative, and made subject to some such consideration·or reconsideration as was attempted at the second meeting; and that the contract, therefore, made between the two meetings, was subject to the action taken at the latter one. I think that it would be straining the evidence too hard to uphold this view to the extent urged by counsel of invalidating this contract. The resolutions at the first meeting in favor of building the bridge were definite, distinct, and complete upon their face. The resolution for an adjournment of a week, as spread upon the minutes, was complete, and contained no provision for such further action as was attempted by

the town board. There was nothing in the minutes to advise the defendants that the town board had not reached a final decision in the matter, and that they ought to wait for such action. The resolution adopted at the second meeting correcting the minutes so as to make the resolution of adjournment read, in effect, that the adjournment was taken for the purpose of consulting counsel to ascertain what the duty of the town board was with reference to building bridges, etc., produces the impression of being an after-thought. It would seem as if the town board, after taking action at the first meeting in favor of building a bridge, had, before the second meeting, learned that there was opposition to such building, and criticism of their conduct in authorizing it, and had then attempted to reconsider their action more than the facts authorized them to. Even if it should be assumed that the resolution of adjournment, as corrected at the second meeting, had been adopted and originally spread upon the minutes, I do not think that it would permit a cancellation of a contract made in the meantime, under the resolutions adopted at the first meeting. As I have said, those resolutions fairly and definitely authorized the making of this contract. Assuming that, after these resolutions were so adopted, the town board had passed a resolution to adjourn for a week to consult counsel with reference to their power to make the contract, and had notified defendants to that effect before the contract was executed, the fair inference would be that the board desired to ascertain whether its action in authorizing the construction of a bridge was authorized and legal, and, if it was, that such action should stand. This, I think, is the legal effect of what took place. The resolutions were adopted for the construction of the bridge. The town board had the power to adopt those resolutions. Its determination to adjourn for a week to consult counsel with reference to its power to take such action would not of itself modify or impair that action and resolutions, and, it having the power to pass them, I think its duty was discharged and performed and completed when it did pass them, so as to authorize a contract made in pursuance of the power therein contained. Further than this, all of the law submitted in this case is against the proposition that the town board has ever rescinded its decision to have a new bridge built, even assuming that the contract made between the defendants was subject to such rescission at the time of the second meeting. The resolution adopted at the second meeting was simply to reconsider the resolutions adopted at the first meeting in favor of building a bridge. The first resolutions were not in any other way repealed or rescinded. It is held in Ashton v. City of Rochester, 60 Hun, 372, 14 N. Y. Supp. 855, in the case of resolutions adopted by municipal authorities, that a vote simply to reconsider a prior resolution, without further action, is not sufficient to rescind it, or prevent it from being followed. Applying the reasoning of that case to this one, the resolutions by the town board in favor of building a new bridge have never been rescinded or canceled, and, after the second meeting was held, were still an authority for the execution of the contract in question.

I pass now to the consideration of the third proposition made by plaintiffs for maintaining this action, namely, that the alleged contract between the parties was corrupt, and made for the purpose of defrauding the town. Plaintiffs, as taxpayers, can succeed in this action only by alleging and proving fraud, or collusion, or bad faith in the making of the contract, to which the commissioner has been a party. Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471. The provisions of the Code authorizing an action by a taxpayer to prevent "waste of or injury to" the property of a municipality is confined to cases where the acts complained of are without power, or where corruption, fraud, or bad faith amounting to fraud is charged. The words "waste" and "injury" include only illegal, wrongful, or dishonest action. An action by a taxpayer of a municipality to restrain the governing body from official action clearly within its power and discretion, and without any charge or allegation of fraud, collusion, corruption, or bad faith, cannot be maintained, although it be averred that such intended action is unwise, and without due regard to economy. Talcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263. Can it be fairly deduced from the evidence in this case that the defendant commissioner was guilty of fraud, or bad faith amounting to fraud, in making the contract for the construction of this bridge? I have no right to suppose such fraud or bad faith unless it is to be legitimately inferred from the evidence. The burden rested upon the plaintiffs to establish those propositions fairly and legitimately by legal evidence. I have already stated the principal facts which it seems to me may be found from the evidence bearing on this question. I may briefly recapitulate them here. The town board passed resolutions condemning the old bridge, and authorizing the construction of a new one. The representative of the bridge company and the commissioner of the town spent the night of the day in which that action was taken at the same hotel, and early the next morning started out for the purpose of enabling the commissioner to take legal advice as to his power to make a contract for the bridge. He consulted one lawyer, missed another one, and without further advice made a contract for the construction of the bridge, which was somewhat indefinite in its terms, and whereby he bound the town to pay $500 more for the bridge than the price at which it was privately offered to certain of the town board to construct it if action was taken immediately on the day of the meeting of the town board. So far as appears, the commissioner did not know of this private offer at a reduced price. His expenses upon the trip to consult a lawyer were paid by the representative of the bridge company, and a bond was executed to him to indemnify him against personal liability; but this was intended to relate principally, at least, to a resolution theretofore adopted by the town board against making contracts in excess of a certain amount without advertising, and which resolution concededly did not apply to this case. As against these facts there is evidence proving, and none tending to disprove, the fact that a new bridge was needed. There is evidence in favor of the proposition, and none against it, that the bridge covered by the contract was suitable, and was well worth the price agreed to be

paid therefor. There is no evidence that the commissioner received any personal advantage whatever from the making of this contract. I see nothing improper in the fact that he made the representative of the bridge company pay his expenses to Carthage and Watertown, instead of charging them to the town. It appears that upon the evening of the day when the town board held its first meeting dissatisfaction was expressed by some of the residents of the town over the proposition to build this bridge, but it certainly cannot be inferred from the evidence that there was anything in this opposition which made the commissioner guilty of fraud or bad faith in making the contract in spite of it, even if he knew of the feeling. As I have stated, there is no evidence that he knew of the offer at a reduced price made by the bridge representative to certain of the town board; but, even if he did, I do not believe that I could properly find that it is evidence of fraud that the bridge representative said to certain people that, if they would favor closing up a contract at once upon a certain day, he would build a bridge for them for which he had previously asked $3,500 for $3,000, and then, when they refused to do this, and he finally made the contract, he went back to his original price of $3,500, which it appears was a proper valuation. In short, upon a consideration of all of these facts, and of all of the evidence in the case, I am unwilling to say that the defendant commissioner has been fairly convicted of fraud or collusion or bad faith, which is the only issue presented to me. He very possibly may have attempted to make a contract for a bridge and create a liability against the town which is unsatisfactory to a majority of the inhabitants thereof. He may have been persuaded into acting without due deliberation and making a contract which is not entirely provident or well considered. He may have displayed bad judgment in attempting to carry out the authority which the statute gave him. But it is well settled that for these faults, if he has been guilty of them, this action cannot be maintained. The inhabitants of the town passed upon his judgment and capacity and willingness to carry out the wishes of the majority when they elected him to his office, and the courts cannot, in such an action as this, guard the taxpayers against any mistakes which they may have made in these respects.

The plaintiffs' counsel urges as the second ground why this action should be maintained "that the contract under which the parties were acting was not a valid contract, because not completed," and in support of this contention he urges upon his brief that the contract between Pate as highway commissioner and the bridge company was never completed; that the contract itself is incomplete, because it lacks the plans and specifications which were never prepared or added; that to make a binding contract all the essential matters between the parties must have been agreed upon; that their minds must meet, etc., and that this has not been done in this case. In other words, he urges that no sufficient or valid or binding contract was ever executed between the defendants for the construction of this bridge, and various proofs were addressed to this question upon the trial of this action. I have not considered this ques-

tion, and do not intend to pass upon it, because it does not seem to me to be properly or legitimately before me in this action. This is an action of waste, in which the plaintiffs are seeking to restrain work under a contract upon the grounds that it was executed without proper authority, and that it was tainted by fraud and bad faith upon the part of the commissioner. The action presupposes and assumes that a contract in form has been made for the doing of the work, but that it is subject to defects which entitle plaintiffs to restrain action under it. The second ground just stated proceeds upon the theory that no valid or sufficient contract was ever made in form. If plaintiffs are wrong in this contention, and the purported contract executed between the defendants was sufficiently definite and complete to constitute a contract, and be binding, then plaintiffs are entitled to no relief upon this ground. If, upon the other hand, they are right that no contract valid upon its face was ever made between the parties; that the purported contract was too indefinite and insufficient to be binding or valid, and that, therefore, in effect, there is no contract for the construction of this bridge,—this action is, in my judgment, not the proper method of relief. If the defendant bridge company is attempting or shall attempt to construct a bridge in the town of Crogan without any valid contract for the construction thereof, other questions will be presented, and other methods of relief may be opened to the taxpayers of that town than those which can be considered here. These views lead to a dismissal of plaintiffs' complaint, with costs.

Complaint dismissed, with costs.