(84 Misc. Rep. 278)

#### HOLMES et al. v. ST. JOSEPH LEAD CO. et al.

(Supreme Court, Special Term, New York County. February, 1914.)

1. CORPORATIONS (§ 447*)—CONTRACTS—GROUNDS FOR SETTING ASIDE.
    Merely that certain stockholders may believe that a contract made by the corporation within the scope of its chartered powers is unwise is not ground for setting same aside; it being essential to such action that there be fraud, or conduct so manifestly oppressive as to be equivalent thereto.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1786, 1788, 1807; Dec. Dig. § 447.*]

2. CORPORATIONS (§ 460*)—CONTRACT—VALIDITY.
    Where the immediate purpose of a contract made by a corporation is to obtain money to pay outstanding notes and purchase certain securities, the fact that the company has sufficient money on hand that by passing the payment of dividends it could accomplish the purpose sought does not warrant declaring the contract invalid at the suit of stockholders; the question of expediency in the matter being for the directors, and the corporation not being precluded from distributing earned profits as dividends by the fact that some of its assets are in such a form that it must borrow money for its business.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1813; Dec. Dig. § 460.*]

3. CORPORATIONS (§ 483*)—LIEN—WHAT CONSTITUTES.
    A provision of an agreement under which a corporation borrowed money that, in case of a sale of certain securities, the proceeds should be applied to specific debts did not create a lien, but was simply an executory contract to give a lien in a contingency which might never arise, and hence was not a violation of a prior agreement evidencing a debt, and providing that if any lien should be given by the debtor on the securities without equally securing the earlier debt, such debt should at once mature.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1890–1892; Dec. Dig. § 483.*]

4. CORPORATIONS (§ 483*)—JUDGMENT NOTE—LIEN.
    A provision of a note empowering a trustee to confess judgment in case of default did not create a lien on the corporation maker's property.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1890–1892; Dec. Dig. § 483.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. CORPORATIONS (§ 522*)—JUDGMENT NOTE—VALIDITY.
   A judgment note executed by a corporation and empowering the holder or his trustee to confess judgment on default, is not invalid as involving a delegation of the discretion vested in the directors of the corporation.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2035, 2099–2113; Dec. Dig. § 522.*]

6. CANCELLATION OF INSTRUMENTS (§ 42*)—RIGHT TO AMEND COMPLAINT.
   In an action by stockholders to set aside a contract made by the corporation, the fact that a prolongation of the suit might lead to a cancellation of the contract by the other party thereto, could not deprive plaintiffs of their right to amend the complaint.
   [Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 91–95; Dec. Dig. § 42.*]

7. CANCELLATION OF INSTRUMENTS (§ 63*)—GROUNDS—CONTRACT BY CORPORATION—ILLEGITIMATE PURPOSE.
   Where the directors of a corporation sell its notes, the innocent purchasers cannot, through cancellation of the contract at the suit of stockholders, be deprived of the benefit of their bargain by the fact that the directors intended thereby to facilitate the subsequent declaration of dividends; the lenders not being charged with any duty to investigate the purpose of the corporation borrower, and being entitled, in the absence of notice that the purpose was illegitimate, to stand on their bargain.
   [Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 129; Dec. Dig. § 63.*]

8. INJUNCTION (§ 114*)—PARTIES—PAYMENT OF DIVIDENDS—CORPORATIONS.
   Persons who loan money to a corporation are neither necessary nor proper parties to a suit to restrain the payment of dividends, though such payment is facilitated by the procurement of the loan, where no sufficient ground is shown for the cancellation of their contract.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

Action by Robert Holmes, individually and as trustee, and others, against the St. Joseph Lead Company, a corporation, and others, to set aside an agreement. After amendment to complaint with leave, defendants move for judgment on the pleadings. Motion granted, and complaint dismissed.

Hatch & Sheehan, of New York City, for plaintiffs.

Dexter, Osborne & Fleming, of New York City, for defendant St. Joseph Lead Co., defendants Crane, Parsons, Smith, Camp, and Cornell, as officers and directors of St. Joseph Lead Co., and defendants Catlin, Desloge, Chapin, Shibley, Howe and Kotany, as directors of St. Joseph Lead Co.

Spooner & Cotton, for defendants White, Weld, Clark, Morris, Vanston, Rutter, Cabot, and Thompson, doing business as a copartnership under the firm name and style of White, Weld & Co., and defendants Smith and Moore, doing business as a copartnership under the firm name and style of Smith, Moore & Co.

CARDOZO, J. The plaintiffs are stockholders of the defendant St. Joseph Lead Company. They bring this action in the right of the corporation to set aside an agreement between that company and the firms of White, Weld & Co. and Smith, Moore & Co. The contract which they assail is a long one; but for present purposes its essential

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provisions may be briefly stated. White, Weld & Co. and Smith, Moore & Co., who will be referred to us the bankers, agree to buy $2,500,000 of the company's 6 per cent gold notes, to be dated January 1, 1914, and to mature January 1, 1918. They are to make the purchase at the price of 90 per cent. of the face amount of the notes, plus accrued interest. They are also to have an option to buy $1,500,000 at the same price, this additional quantity bringing the total authorized issue to a maximum of $4,000,000. While any of these notes remain outstanding, the company is not to mortgage or pledge its property, nor suffer any lien to be placed upon its property, which shall have priority over the notes. In particular, it is not to mortgage or pledge the stock and securities of the Mississippi River & Bonne Terre Railway and the Doe Run Lead Company, which it holds in large amounts. It is also not to sell or dispose of the shares or securities of the last-named companies without the consent of the note holders' committee; and if any such sale is made the proceeds are to be paid to the Bankers' Trust Company, as trustee, to be applied to the redemption of notes. A sinking fund is also created by which the company is to make semiannual payments in prescribed amounts to the trustee, the fund to be used in the purchase and cancellation of such notes as are offered at a price not to exceed 101, and if none are offered, then in the redemption at 101 of notes to be called by lot. In the event of default in the payment of interest on the notes, or in the making of any sinking fund payment, or upon the violation of the company's promise not to sell certain securities without the consent of the noteholders' committee, or in the event of continued default in respect of any other covenant for more than 30 days after notice thereof, the entire issue of gold notes is to mature, and the trustee is authorized to confess judgment, or cause the same to be confessed, for the full amount of the gold notes then outstanding, together with interest and attorneys' fees. This contract, thus briefly summarized, is assailed by the plaintiffs upon several grounds; and the defendants, by demurrers to the complaint, bring up the question whether the objections, viewed singly or collectively, are sufficient, as stated in the complaint, to constitute a cause of action.

[1] 1. It is said that:

"If the said agreement with White, Weld & Co. and Smith, Moore & Co. is allowed to be carried out, the assets of the St. Joseph Lead Company will be wasted and a large loss caused to its stockholders on account of the low price at which the notes referred to in said agreement are proposed to be sold and because, as plaintiffs believe the financial condition of the company does not make it necessary or advisable to issue any securities at this time."

Those allegations are far from sufficient as a statement of facts justifying the court in overriding the judgment of directors. A contract made by a corporation within the scope of its chartered powers may not be set aside merely because some stockholders believe it to be unwise. There must be either fraud or conduct so manifestly oppressive as to be equivalent to fraud. Burden v. Burden, 159 N. Y. 287, 307, 54 N. E. 17; Leslie v. Lorillard, 110 N. Y. 532, 18 N. E. 363, 1 L. R. A. 456; Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 124, 100 N. E. 721. No charge of fraud is made. There is no claim that the price of 90 was fixed by the directors with any furtive purpose to benefit

themselves or to despoil the company. There is not even a claim that any better price could be obtained. There is merely the assertion of the plaintiffs' disagreement with the directors as to the expediency òf the transaction. McMullen v. Ritchie (C. C.) 64 Fed. 253, 262; Pollitz v. Wabash R. R. Co., supra. Because of this diversity of view, the court is asked to revise the judgment of the directors, and substitute its conclusion for theirs. In the language of Peckham, J., in Gamble v. Queens County Water Co., 123 N. Y. 91, 99, 25 N. E. 201, 202 (9 L. R. A. 527): "This is no business for any court to follow."

[2] 2. It is said that the complaint exhibits a purpose on the part of the directors to pay dividends out of capital instead of profits, and that the contract is a means to the attainment of that end. This charge is founded upon the allegation that:

"One of the purposes and the main purpose of authorizing the making of said agreement * * * is to enable the St. Joseph Lead Company to continue the payment of dividends at the rate of 4 per cent. per annum."

That is not equivalent to an allegation that the company intends to declare dividends illegally. The written contract shows that its immediate purpose is to obtain money to pay outstanding notes, and to purchase securities of the Doe Run Lead Company. The plaintiffs say that the company ought to use for that purpose the $600,000 alleged to be in banks to its credit, and should pass the payment of dividends. That is a question of expediency to be settled by the directors. A corporation which has earned profits is not precluded from distributing them as dividends because some of its assets are in such a form that it must borrow money for its business. Wood v. Lary, 47 Hun, 550. If the plaintiffs meant to charge that there was a conspiracy to declare dividends not earned, they should have made the statement unequivocally. Clark v. Dillon, 97 N. Y. 370.

[3] 3. It is said that the agreement exposes the company to the risk of being declared in default in respect of an earlier contract between itself and the Mississippi River & Bonne Terre Railway, and that serious prejudice would thereby result. The Mississippi River & Bonne Terre Railway holds the note of the St. Joseph Lead Company for $2,500,000, and the following is one of its provisions:

"8. For the further security of the holder thereof, the undersigned further promises and covenants that, so long as any part of the principal or interest of this note is outstanding and unpaid, it will not execute and deliver any mortgage, deed of trust, or any other instrument secured upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every bond or other evidence of debt, issued under, and secured by, any such instrument. If, while any part of the principal or interest of this note is outstanding and unpaid, the maker hereof does execute and deliver any mortgage, deed of trust or other instrument creating a lien upon its property without thereby securing this note equally and ratably with every bond or other evidence of debt issued under and secured by any such instrument, then the holder hereof may at its or his election, declare and make this note at once due and payable by written notice delivered to any executive officer of the maker, and this remedy shall be deemed cumulative and in addition to any other remedy available to the holder hereof."

The argument is made that this provision of the note is violated by the agreement in controversy. One of the terms of that agreement is

that certain securities belonging to the St. Joseph Lead Company are not to be sold without the consent of the noteholders' committee, and that, if such a sale is made, the proceeds are to be paid to the Bankers' Trust Company, to be used in payment of these notes. It is said that this constitutes a mortgage of the proceeds, or, if not a mortgage, amounts to the creation of a lien. I do not assent to that view of its effect. The company does not agree to sell the securities. It merely agrees that, if it does sell, the proceeds will be applied upon these notes. The securities are not subject to any lien to-day, and are as available to the general creditors as they have ever been. The agreement to apply the proceeds to specific debts if there shall be a sale does not create a lien upon proceeds which are not now, and may never be, in esse, but amounts at the utmost to an executory agreement to give a lien in a contingency which may never come to pass. Zartman v. First Nat. Bank, 189 N. Y. 267, 272, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co., 193 N. Y. 92, 104, 85 N. E. 801. If the directors attempt to sell the securities while the note is still outstanding, with the result of anticipating its maturity, the question will then come up for the first time how far such a sale is consistent with the company's welfare. Drucklieb v. Harris, 209 N. Y. 211, 102 N. E. 599. No wrong has yet been threatened, and none may ever follow. No lien has been imposed on any property of the company entitling the Mississippi River & Bonne Terre Railway to declare its note matured. So far as the complaint shows, it does not assert such a right. That it will ever do so is a remote risk, which the defendant's directors in the exercise of their discretion might lawfully assume.

[4] 4. It is said that the provision by which the trustee is empowered to confess judgment in case of default vitiates the contract. The point is made that this amounts to the creation of a lien in violation of the Mississippi River & Bonne Terre Railway's note. That argument will not hold. Matter of Richards, 96 Fed. 935, 37 C. C. A. 634.

[5] The point is also made that a corporation may not execute a judgment note, that is, a note empowering the holder or his trustee to confess judgment upon default, because such an agreement, it is said, involves a delegation of the discretion of the directors. But the directors did not delegate their discretion at all. They empowered the trustee to confess the judgment upon default, and upon default only. I think it is clear that such a note is not made invalid by the fact that it is issued by a corporation. How far such notes, whether made by corporations or by natural persons, are effective in this state is perhaps unsettled. Teel v. Yost, 128 N. Y. 387, 28 N. E. 353, 13 L. R. A. 796. They are in common use in other states. If they are ineffective under our statutes governing confessions of judgment, the only consequence is to nullify the authority given to the trustee, and to make it impossible for any judgment ever to be entered by virtue of it. A court of equity is not called upon to declare that consequence in advance.

[6] 5. All the plaintiffs' objections to the contract have now been stated, and found to be untenable. The demurrers must therefore be sustained. The defendants argue strongly that leave to amend should be refused. They say that the plaintiffs have already amended once,

and they insist that the prolongation of the suit may lead to the cancellation of the contract, under a provision which, it is said, gives the bankers the right to withdraw in case any legal proceedings are brought to restrain the issuance of the notes. Whether the complaint can be successfully amended may be doubted, but I am not persuaded that the privilege of attempting an amendment should be denied to the plaintiffs, if they are so advised. The company chose to enter into a form of contract which exposed it to hazard if litigation should ensue. It is not entitled to repress litigation by using a hazard of its own making as ground for curtailing a suitor's remedies. I think, however, that the amended complaint, if any, should be served within five days after the service of the order to be entered on this motion. I feel abundantly assured that there will be no amendment unless plaintiffs' counsel believe it to be material, and, if that is their belief, the privilege should be granted to them.

The demurrers are sustained, with $10 costs, with leave to the plaintiffs to amend their complaint upon the conditions above stated.

Motion for Judgment on the Pleadings under Section 547 of the Code.

In a memorandum filed on January 9, 1914, I stated the essential facts of this case as disclosed by the complaint then before me. A new complaint has now been served, which the defendants White, Weld & Co. and Smith, Moore & Co., referred to in this controversy as the bankers, have again challenged as insufficient. The motion is made in behalf of the bankers alone, and not in behalf of the St. Joseph Lead Company or its directors.

[7] 1. In the new complaint the charge is made that the St. Joseph Lead Company has no surplus profits from which it can lawfully pay dividends; that its apparent surplus is fictitious, and that its directors "threaten and intend" to pay dividends based upon a pretended surplus and in violation of the statute. The averment is that one of the purposes, and the main purpose, of authorizing the agreement with the bankers, is to enable the St. Joseph Lead Company to continue the payment of dividends at the rate of 4 per cent. per annum. The immediate purpose of the agreement, as appears upon its face, is to provide the company with money with which to pay its notes, and with which to buy other securities; but the plaintiff says, in effect, that the money would not be needed if dividends were not declared, and hence that the indirect purpose of the transaction is to permit the dividends to be paid. There is no charge that the bankers were privy to that purpose. There is no suggestion that, as a result of some conspiracy between the directors and the bankers, the agreement, to the knowledge of all of them, was merely a step in the fulfillment of an unlawful scheme. The broad proposition is asserted that, where a company has agreed to sell its notes, the innocent purchasers may be deprived of the benefit of their bargain by proof of some secret purpose on the part of the company's directors to facilitate thereby the subsequent declaration of dividends. To that proposition I cannot assent. There is no waste of the company's property where, in return for its notes, money is put into its treasury. The waste, if any, results from the

use of the money thereafter. It is one thing to say that the improper distribution of the company's capital through the unlawful declaration of dividends will be enjoined. It is another thing to say that a contract for the sale of its notes will be canceled. The contract in suit has been signed and delivered. The making of it is, therefore, no longer subject to be restrained. It can be destroyed only by setting it aside. The moment that it was executed it conferred rights upon the bankers of which they may not lawfully be deprived, unless in becoming parties to it they have themselves committed a wrong. If they had agreed to buy a tract of land from the company I do not think it would be claimed that their contract would be subject to cancellation upon proof that the directors, without their knowledge, had conceived the idea that the proceeds of the sale would make it possible to continue the declaration of dividends. This contract for the purchase by the bankers of the company's notes is not subject to any greater infirmity. The lenders are not charged with any duty to investigate the purpose of the borrower, and, in the absence of notice that the purpose was illegitimate, may stand upon their bargain. Matter of Payne & Co., (1904) 2 Ch. 608.

[8] The argument is made that, even though the bankers are not necessary, they may still be proper parties; their presence, it is said, being essential to the complete determination of the controversy. But they are not even proper parties to a suit to restrain the payment of dividends. They are proper parties only if the complaint exhibits a sufficient ground for the cancellation of their contract. McManus v. Durant, 151 App. Div. 663, 665, 136 N. Y. Supp. 223; McCrea v. Robertson, 192 N. Y. 150, 84 N. E. 960. Such a ground, in my judgment, has not been shown. I hold, therefore, that the directors' purpose in respect of dividends does not invalidate the contract with the bankers. Whether the allegations of the complaint make out a cause of action against the directors to enjoin the payment of dividends is a question which I do not now attempt to determine.

2. Additional averments are contained in the complaint before me, from which the argument is made that the contract was in excess of the directors' powers. The substance of those averments is that the plaintiff had other litigations with the directors of the St. Joseph Lead Company and of the Doe Run Lead Company, an allied corporation; that an agreement of settlement was made by which the directors of both companies undertook to follow the recommendations of a joint committee of stockholders; that one of the recommendations of the committee was that dividends should not be paid until July, 1914; and that the agreement of settlement and the recommendations of the committee were approved and ratified at meetings of the stockholders. It is said that any action of the directors in violation of this settlement was ultra vires. I do not share that view. The business of a corporation is to be conducted by its directors. They are not required to follow the recommendations of stockholders. Buffalo Loan T. & S. D. Co. v. Medina Gas & E. L. Co., 162 N. Y. 67, 76, 56 N. E. 505; Continental Securities Co. v. Belmont, 206 N. Y. 7, 99 N. E. 138. Still less are they required, if indeed they are permitted, to abdicate their

functions and surrender to a stockholders' committee the right to control their discretion. If the contract with the bankers involved a breach of the earlier contract of settlement, which may be doubted, it was not placed thereby beyond the directors' powers.

3. Some criticism is made because of the fact that a member of one of the firms of bankers is also a director, not of the St. Joseph Lead Company, but of other corporations which that company controls, but I find the criticism without substance.

The motion is therefore granted, and the complaint as against the defendants White, Weld & Co. and Smith, Moore & Co. is dismissed, with costs.

Ordered accordingly.