FRANK E. LONAS, Respondent, *v.* LAYMAN PRESSED ROD COMPANY, INC., Defendant, Impleaded with INGLIS M. UPPERCU and Others, Appellants.

First Department, November 9, 1934.

*Benjamin Cohen* of counsel [*George F. Händel* and *Irene Rutherford O'Crowley* with him on the brief; *O'Crowley & McDannel,* attorneys], for the appellants Thompson and Allen; [*Child, Händel & Axman,* attorneys], for the appellant Uppercu.

*W. Morton Carden* of counsel [*W. Morton Carden,* attorney], for the appellant Edwin B. Cadwell.

*Wilson E. Tipple* of counsel [*Albert Firman* and *Adolph Hansen,* with him on the brief; *Tipple & Plitt,* attorneys], for the respondent.

TOWNLEY, J. Plaintiff recovered a judgment against the corporate defendant on April 4, 1925, for $17,933.75, and execution

having been returned wholly unsatisfied, brought this action under sections 60 and 61 (formerly sections 90 and 91) of the General Corporation Law. Plaintiff's theory is that an action lies in his favor as a judgment creditor against one or more directors, managers or other officers of a corporation to procure a judgment for the following purposes or so much thereof as the case requires:

" 1. To compel the defendants to account for their official conduct, including any neglect of or failure to perform their duties, in the management and disposition of the funds and property, committed to their charge.

" 2. To compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or by other violation of their duties." (§ 60, *supra*.)

An action may be brought for the relief prescribed, by the Attorney-General in behalf of the People of this State or by the corporation or a creditor, receiver or trustee in bankruptcy thereof or by a director or officer of the corporation. (Gen. Corp. Law, § 61.)

This action is brought by the judgment creditor in his individual capacity and the prayer for relief does not include any provision that the recovery shall be held for the benefit of all the creditors of the company *pro rata*. It was, therefore, urged before the trial court that the complaint should be dismissed because plaintiff was not suing in a representative capacity. Certainly, judgment creditors may bring an action under this section in aid of execution. (*Buckley* v. *Stansfield*, 155 App. Div. 735; affd., 214 N. Y. 679; *Whalen* v. *Strong*, 230 App. Div. 617.) Assuming, but not deciding, that if there were other creditors, the recovery would have to be shared *pro rata* by such creditors as well as by the diligent plaintiff, in the present case the only other creditors are the defendants Thompson and Uppercu. They were parties to this action, and have claimed no relief. The trial court was correct in disregarding the claims of Allen and the alleged indebtedness to the patent attorneys since the Statute of Limitations had certainly run against them so far as anything appears in this record.

Plaintiff was an officer of the corporate defendant and was associated with defendants Uppercu and Thompson in developing a pressed steel connecting rod useful for aeroplanes. Various amounts have been expended by these men in furtherance of that purpose. In the hope of saving this investment by leaving its further development in the hands of the defendant Cadwell and the companies in which he was interested, a contract was made on September 24, 1917, between the corporate defendant and the

American Ammunition Company, Inc. The latter company was given forty days from the date of the agreement to conduct an examination into the validity, title and value of the patents and the marketability of the connecting rods. If the ammunition company decided to proceed, a new corporation was to be formed for the purpose of taking over the business of the defendant corporation. The corporate defendant was to assign its patents, licenses, tools and equipment in exchange for all of the common stock of the new company. It was to retain forty-nine per cent of this stock and the balance of fifty-one per cent was to be transferred to trustees who were to hold it upon the conditions hereinafter stated. The ammunition company was to advance as required for the development of the project up to $100,000, for which it was to receive preferred stock. Should further funds be needed, the ammunition company had the right, but was not required, to advance up to $200,000. If $200,000 were advanced, the ammunition company was to receive preferred stock for the additional advances and the common stock deposited with the trustees. After $200,000 were advanced and after the company got into profitable production, the gross income of the new company was to be used as follows:

" 9. All gross income of said new company from the operation of its business shall be used as follows:

" (a) To defray all operating expenses, including not less than Ten per cent per annum depreciation for building, equipment and machinery of the new Company. The amortization of all tools, dies, etc., to be left to the discretion of the Board of Directors of the new Company.

" (b) A sum sufficient to pay the Seven per cent cumulative preferred dividends on all outstanding preferred stock.

" (c) Ten per cent of the remaining earnings annually to retire preferred stock, until same is all retired at par.

" (d) Fifty per cent of the remaining net earnings after making the foregoing deductions shall be set aside as a contingency patent reserve, to be set aside from time to time as necessary, for the purpose of protecting said patents, and for the protection of the preferred stock, should the commercial value of the patents be, for any reason, destroyed. The total amount of earnings so to be set aside, shall be the sum of One Hundred Thousand Dollars.

" (e) Seventy-five per cent of the remaining net earnings shall be paid to the Layman Company or its nominees, until it shall have received the aggregate sum of One Hundred Thousand Dollars, together with interest thereon at Six per cent per annum from the date hereof, until said sum of One Hundred Thousand Dollars and

interest thereon shall have been entirely repaid. The amounts so paid to be in part consideration for the transfer of the patents and other property by the Layman Company to the new Company, as hereinbefore provided.

" (f) All net earnings, after the deductions and payments above provided for, shall be distributed to the owners of the common stock in proportion to their respective holdings, as dividends, as same may be declared from time to time by the Board of Directors of said new Company. All dividends declared and paid while the Fifty-one per cent of the common stock is still on deposit with the Trustee, as hereinbefore provided, shall be paid to said Trustee for the account of the Ammunition Company and paid to said Company upon the delivery of the common stock to it. Should said common stock not be delivered, all such dividends shall be paid to the Layman Company or its nominees, by the Trustee."

These provisions are important because the chief claim made by the plaintiff is that the rights of the corporation to the payments provided for under subsection " e " above were lost to the corporation by the negligence or carelessness of the defendants.

The ammunition company under this agreement was permitted to assign its contract to the American Standard Metal Products Corporation without relieving the ammunition company from any liability. This agreement was signed by the plaintiff as an officer of the corporation and he testified that he had read it and that he knew its contents. On November 30, 1917, the ammunition company, in accordance with the terms of this contract, assigned its interest to the American Standard Metal Products Corporation.

Thereafter, on March 4, 1918, the defendant corporation entered into a written contract with plaintiff, Uppercu and Thompson. In this agreement it was stated that the corporate defendant was indebted to the individuals in certain specified amounts, that the ammunition company under clause 9 (e) of the agreement of September 24, 1917, had agreed to pay to the corporate defendant the sum of $100,000 together with interest at six per cent, and that, therefore, the corporate defendant would pay to the individuals and any other creditors the amount of their claims plus interest at six per cent before distributing this $100,000 amongst the stockholders. It was further provided that the corporate defendant would not modify the terms of the agreement with the ammunition company with respect to the payment of this $100,000 without the written consent of the individuals. It was also provided that the corporate defendant would not modify or amend its agreement with the ammunition company so as to subordinate the claims of its present creditors to any other claims which might thereafter

be incurred without the written consent of the individuals. As may be seen from a reading of paragraph " e " above, this payment was conditioned upon the new company earning profits which would allow it to make the payments provided for after certain superior claims had been satisfied.

Thereafter, on October 11, 1918, an agreement was made between the American Standard Metal Products Corporation and the Layman Connecting Rod Corporation (the new company) which embodied the conditions hereinbefore stated. Under this agreement $45,500 was advanced. On October 21, 1918, the American Standard Metal Products Corporation assigned its contract together with its rights to the stock to Krasberg Engineering and Manufacturing Corporation without relieving itself of any liability. The fiscal agent of the Standard Metal Products Corporation, E. B. Cadwell & Company, Inc., advanced $150,000 to Krasberg Engineering and Manufacturing Corporation which was expended in making experiments and attempting to develop the rod. The attempted development of this connecting rod by the Krasberg Engineering and Manufacturing Corporation was not successful and the contract with it was canceled by consent on December 27, 1918. All the stock and assets, patent rights and processes were returned to the defendant corporation's assignee and all claims to preferred or common stock were waived. This abandonment of all attempts to exploit defendant's patents occurred by consent of all the parties except the plaintiff who did not give his consent to any contracts that were made after March 4, 1918. It is, of course, apparent from this recital that the directors failed to try to compel the ammunition company to pay the balance of the first $100,000, some $54,500, which it had agreed to advance. This failure forms the major claim of waste set out by the plaintiff.

Any claim for loss of benefits to plaintiff under the contract which was abandoned is dependent on the assumption that had an additional $54,500 been expended, the project would have been successful and on the further assumption that had it been successful its earnings would have been large enough to have made not only the payments called for by paragraph " 9 " (a to d) but in addition thereto those under clause " 9 " (e) on which plaintiff relies. There is nothing in the history of the development of this patent which would justify either assumption. It has never been a commercial success. There is nothing in this record to indicate that the expenditure of additional moneys would have affected the situation. It may well be claimed that the directors in the cancellation of this agreement acted in the best interests of the company. Experience had indicated that there was little likelihood of a successful develop-

ment under the management of those on whom the duty to exploit the patents had been transferred under the contract. The advance of the full $100,000 would have burdened the company with an obligation in the form of preferred stock with little promise of corresponding advantage. In any event, after the abrogation of the contract, the corporate defendant stood in its original position with complete ownership of the new corporation and in full control of all the patents enhanced in value by the expenditure of about $200,000 in experiments. We think that on this state of facts, the conduct of the directors was not subject to the charge of waste.

There is a further claim of waste against the directors for an alleged wrongful dissipation of $8,000 collected by the corporate defendant from the United States government in settlement of a war contract claim. Out of this $8,000, an item of $2,240 was paid to the defendant Allen in connection with the financing of a Ford oiler. The charge was that this expenditure was a waste in that it was *ultra vires* the corporation to expend money for anything except the manufacture or development of pressed steel connecting rods. The record is not clear as to just what this oiling system was made of. However, the articles of incorporation enabled the corporation among other things to deal in any manner with pressed, drawn, stamped, extruded or forged metal of any type. If any such metal were used in any part of the oiling system, the agreement with Allen was not *ultra vires* the corporate powers. In any event, we are not satisfied that the proof on this point sustained the finding in favor of plaintiff. The balance of the $8,000 was expended for what were the company's obligations entered into in good faith either for debts incurred in collecting the money or for carrying on the business outside of the ammunition company's contract. Such expenditures do not constitute waste. At most they would give rise to a claim by the plaintiff for breach of contract in permitting the corporation to incur debts which were settled prior to plaintiff's own in violation of a specific agreement to the contrary.

The judgment should be reversed, with costs, and the complaint dismissed, with costs, without prejudice to an action for breach of contract.

FINCH, P. J., O'MALLEY and GLENNON, JJ., concur; MARTIN, J., concurs in result.

Judgment reversed, with costs, and complaint dismissed, with costs, without prejudice to an action for breach of contract. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.