Louis Rous and Others, Respondents, Appellants, v. Floyd L. Carlisle and Lewis Gawtry, Appellants, Impleaded with George Whitney, Respondent, Appellant, and Louis M. Greer and Others, Defendants.

First Department, March 7, 1941.

*Harry Bijur* of counsel [*Arthur Ofner* with him on the brief; *Bijur & Herts*, attorneys], for plaintiffs-respondents-appellants.

*Horace R. Lamb* of counsel [*Thomas F. Fennell, II*, and *Craigh Leonard* with him on the brief; *LeBoeuf, Machold & Lamb*, attorneys], for the defendants-appellants.

*Ralph M. Carson* of counsel [*Francis W. Phillips* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed*, attorneys], for the defendant-respondent-appellant.

CALLAHAN, J. In this stockholders' derivative action plaintiffs complain of the conduct of the individual defendants who were trustees of Consolidated Edison Company and directors of various subsidiary companies connected therewith, in two respects: (1) That they authorized the expenditure of various sums to underwriters on the sale of new corporate securities which were excessive and beyond the fair value and the prevailing market price of such underwriting services; and (2) that said directors authorized the payment of excessive prices on the purchase of certain private power plants, and expended company money improperly for changing consumers' equipment from direct to alternating current service.

The alleged improper expenditure of corporate funds for underwriting commissions relates to transactions had on the floating of six large issues of new corporate securities by Consolidated Edison and five of its subsidiaries over a number of years.

Special Term held the complaint sufficient but only as to the defendants who were directors of the various subsidiaries. As we deem the complaint insufficient as against any of the defendants, we will not discuss the contentions concerning the liability of the various classes of directors.

The transactions had in connection with the floating of the various issues are described in detail in the complaint. In brief, the method followed in each instance was to sell the whole issue (bonds aggregating from $25,000,000 to $70,000,000) to the underwriters at a price, and the underwriters agreed to market them at an advance. This advance was two points as to all the issues except one, where it was one and three-quarter points. In addition, the corporation agreed to pay disbursements for lawyers' fees,

advertising, filing of registration reports, etc., which amounted to about another one per centum of the issue. There are no allegations in the complaint as to any fraud on the part of any of the directors, or that they derived any personal profit from these transactions.

The gist of the present complaint as to the payments for underwriters' services is that they were paid more than the fair value of such services, and in excess of the prevailing market price thereof. In addition, we have allegations that the payments were " excessive," " without consideration," " extreme   *   *   *   and oppressive," " unfair, onerous and improvident," and similar general statements. These additional general statements, which are wholly conclusory, add no support to a complaint of misconduct by directors. Facts showing such misconduct must be alleged. (*Gerdes* v. *Reynolds*, 281 N. Y. 180; *Davis* v. *Cohn*, 260 App. Div. 624.)

We may, therefore, consider whether the allegations that the payments were beyond the " fair value " of the services, and in excess of the " prevailing market price " thereof, make the complaint sufficient. It was because of these allegations that Special Term stated that the complaint passed the point at which it would be vulnerable.

When analyzed, we find that the first of these statements as to " fair value " is no more than an expression of the opinion of plaintiffs, minority stockholders, as to what was the value of the underwriters' services. Such opinion is wholly immaterial. It is the opinion of the elected directors and trustees on such subjects that controls. No mere difference of opinion between stockholders and directors as to the proper price to pay for services rendered to the corporation can afford the corporation any right to recover from the directors. If a director exercises his business judgment in good faith on the information before him, he may not be called to account through the judicial process, even though he may have erred in his judgment. It is necessary, therefore, for the stockholder to allege facts showing more than error in business judgment. The essential fact alleged here is that approximately three per centum was paid for all the services and disbursements referred to. Plaintiffs say that two per centum was all the services were worth. On the face thereof the amount expended was not shocking or oppressive.

In *Holmes* v. *Saint Joseph Lead Co.* (84 Misc. 278, 282; affd. on opinion below, 163 App. Div. 885), Mr. Justice CARDOZO, then a justice of the Supreme Court, in holding a complaint insufficient which related to alleged improper costs of refinancing, said:

" 1. It is said that ' if the said agreement with White, Weld & Co. and Smith, Moore & Co. is allowed to be carried out, the assets

of the Saint Joseph Lead Company will be wasted and a large loss caused to its stockholders on account of the low price at which the notes referred to in said agreement are proposed to be sold and because as plaintiffs believe the financial condition of the company does not make it necessary or advisable to issue any securities at this time.' Those allegations are far from sufficient as a statement of facts justifying the court in overriding the judgment of directors. A contract made by a corporation within the scope of its chartered powers may not be set aside merely because some stockholders believe it to be unwise. There must be either fraud or conduct so manifestly oppressive as to be equivalent to fraud. *Burden* v. *Burden,* 159 N. Y. 287, 307; *Leslie* v. *Lorillard,* 110 id. 532; *Pollitz* v. *Wabash R. R. Co.,* 207 id. 113, 124. No charge of fraud is made. There is no claim that the price of 90 was fixed by the directors with any furtive purpose to benefit themselves or to despoil the company. There is not even a claim that any better price could be obtained. There is merely the assertion of the plaintiffs' disagreement with the directors as to the expediency of the transaction. *McMullen* v. *Ritchie,* 64 Fed. Repr. 253, 262; *Pollitz* v. *Wabash R. R. Co., supra.* Because of this diversity of view, the court is asked to revise the judgment of the directors, and substitute its conclusion for theirs. In the language of PECKHAM, J., in *Gamble* v. *Queens County Water Co.,* 123 N. Y. 91, 99: ' This is no business for any court to follow.' "

More recently the late Mr. Justice NOONAN of the Supreme Court, in dismissing a preceding complaint in this very action (*Rous* v. *Carlisle,* 14 N. Y. Supp. [2d] 498, 501), stated the rule as follows:

" On the whole, about the only inference which can be drawn from the complaint is that, in the judgment of the plaintiffs, the underwriting transactions were improvident. Stockholders may not, however, substitute their own or the court's judgment for that of the directors or trustees. If they were permitted to do this, practically every business transaction of a corporation could be subjected to review in the courts and it would be scarcely feasible to manage corporate affairs at all."

Applying the rules thus enunciated to the statement that the sums paid were beyond the fair value of the services, it is plain that a statement of that sort affords no support to any cause of action. The statement in the pleading that prices paid for services were beyond the prevailing market price thereof is of greater factual force, for market price is a fact; but considered in the light of the other matters set forth in the pleadings, we find that this allegation also relates solely to business judgment. As stated, the method

followed in the transactions shown in the pleading was to sell the newly issued securities to the underwriters at a fixed price for resale to the public. For instance, the underwriters took an issue at 100 for resale at 102. The prices actually received by the underwriters on such resales, if and when they were made, would fix their commission or compensation. Aside from the fact that no actual resales are specifically pleaded, we can see that the commissions here depended on the prevailing market price of the securities, for the underwriters were required to find public buyers which means that the resales were at market prices. There is no allegation in the pleading that prices higher than those received from the underwriters had been offered or could have been obtained for the amount of bonds involved, or that any such offers had been refused. The only statement in the pleading on this subject is that there was a great popular demand for the securities at the prices at which the underwriters were authorized to resell them. This is far from saying that issues of many millions of dollars could have been marketed at better than the price obtained from the underwriters. There is in fact no allegation here that the securities sold had a higher market value than that obtained. The gist of the pleading is that the underwriters' services had a lower value than the sum paid. Decision of the question whether to sell at $100 through an underwriter who would take the whole issue, or to endeavor to obtain more by direct sales, was clearly the exercise of business judgment. So it is apparent that the statement that the sums paid for commissions were in excess of the actual market price thereof adds nothing of factual value to show waste of corporate assets. We deem the complaint insufficient to state a cause of action against any of the appellants in so far as it is based on the first ground of alleged misconduct.

Concerning the second division of the complaint, i. e., that portion resting on allegations concerning acquisition of private power plants and payment for change of consumers' equipment to accommodate a change from direct to alternating current, the very statement of the acts complained of shows that they relate to matters of business judgment, i. e., prices paid for power plants and disbursements made with the object of attracting business. Such matters entirely relate to internal business affairs. Merely to say that the steps taken were " wasteful " or " improvident " shows no basis for liability.

We had occasion to pass on quite similar pleadings relating to the same alleged acts of misconduct in the cases of *Wind* v. *Consolidated Edison Co. of New York, Inc.* (260 App. Div. 1001) and *Rosenthal* v. *Carlisle* (261 id. 819) where we upheld orders of Special

Term dismissing the complaints. In accordance with the view which we expressed in those cases, we find that the present complaint is insufficient.

The order, so far as appealed from by the defendants Floyd L. Carlisle and Lewis Gawtry, should be reversed, with ten dollars costs and disbursements, and the motion of said defendants to dismiss the amended complaint as to them granted.

The order, so far as appealed from by the defendant George Whitney, should be reversed, with ten dollars costs and disbursements, and the motion of said defendant to dismiss the amended complaint for failure to state facts sufficient to constitute a cause of action as to him granted. Said order so far as appealed from by the plaintiffs should be affirmed.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Order, so far as appealed from by the defendants Floyd L. Carlisle and Lewis Gawtry, unanimously reversed, with ten dollars costs and disbursements, and the motion of said defendants to dismiss the amended complaint as to them granted.

Order, so far as appealed from by the defendant George Whitney, unanimously reversed, with ten dollars costs and disbursements, and the motion of said defendant to dismiss the amended complaint for failure to state facts sufficient to constitute a cause of action as to him granted. Said order, so far as appealed from by the plaintiffs, unanimously affirmed.