New York Credit Men's Adjustment Bureau, Inc., as Trustee in Bankruptcy of W. F. Irish Co., Inc., Bankrupt, Respondent, *v.* Milton M. Weiss et al., Appellants.

Argued November 17, 1952; decided January 15, 1953.

2

*Robert I. Ruback* for Milton M. Weiss, appellant, and *Sydney Basil Levy* for Louis Amsterdam, appellant. I. The assets of an insolvent corporation may be sold to pay debts and minimize further loss to stockholders. (*Matter of Timmis*, 200 N. Y. 177; *Murrin* v. *Archibald Cons. Coal Co.*, 232 N. Y. 541; *Rhea* v. *Newton*, 262 F. 345; *Bassett* v. *City Bank & Trust Co.*, 116 Conn. 617; *Clapp* v. *Allen*, 20 Ind. App. 263; *Barr* v. *Bartram Mfg. Co.*, 41 Conn. 506; *O'Brien* v. *O'Brien*, 246 Mass. 411; *Phillip* v. *Providence Steam Eng. Co.*, 21 R. I. 302; *Halpern* v. *Grabosky*, 296 Pa. 108; *Sewell* v. *East Cape Co.*, 50 N. J. Eq. 717; *Bowditch* v. *Jackson Co.*, 76 N. H. 351; *Shaw* v. *Robinson Co.*, 50 Nev. 403; *Int. Life Ins. Co.* v. *Vaughan*, 114 Ark. 26; *Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 N. Y. 185; *Matter of American Tel. & Cable Co.*, 139 Misc. 625.) II. The trust fund doctrine is inapplicable and does not restrict the right to sell. (*Wood* v. *Dumar*, 3 Mason 308; *Bartlett* v. *Drew*, 57 N. Y. 587; *Giles Dyeing Mach. Co.* v. *Klauder-Walden Dyeing Mach. Co.*, 212 App. Div. 771, 243 N. Y. 547; *Hurd* v. *New York & Commercial Steam Laundry Co.*, 167 N. Y. 89; *Buckley* v. *Stansfield*, 155 App. Div. 735, 214 N. Y. 679; *Giles Dyeing Mach. Co.* v. *Klauder-Walden Dyeing Mach. Co.*, 198 App. Div. 564, 233 N. Y. 470; *Fogg* v. *Blair*, 133 U. S. 534.) III. The sale at auction without notice to creditors was proper. The disposition of the assets at public auction was proper. (*Hayden* v. *Official Hotel Red-Book & Directory Co.*, 42 F. 875; *Allen* v. *Newmarket Ind. Assn.*, 95 N. H. 121; *Mason* v. *Pewabic Mining Co.*, 133 U. S. 50; *Wilson* v. *Proprietors*, 9 R. I. 590; *Phillips* v. *Providence Steam Engine Co.*, 21 R. I. 302; *Price* v. *Holcomb*, 89 Iowa 123.) IV. There was no requirement of notice to creditors of the auction sale. (*Wright* v. *Hart*, 182 N. Y. 330; *Lowe* v. *Fairberg*, 245 App. Div. 731, 270 N. Y. 590.) V. In disposing of the corporate assets appellants could act only as stockholders

and section 60 of the General Corporation Law is inapplicable. (*Lilienthal* v. *Betz,* 185 N. Y. 153.) VI. Only stockholders can dispose of all corporate assets. (*Gamble* v. *Queens Co. Water Co.,* 123 N. Y. 91; *Texas Co.* v. *Z. & M. Independent Oil Co.,* 156 F. 2d 862; *Matter of Manufacturers Trust Co.* v. *Ralph,* 300 N. Y. 411; *Elyea* v. *Lehigh Sale Mining Co.,* 169 N. Y. 29.) VII. Section 60 of the General Corporation Law is inapplicable. (*Giles Dyeing Mach. Co.* v. *Klauder-Weldon Dyeing Mach. Co.,* 212 App. Div. 771, 243 N. Y. 547; *Darcy* v. *Brooklyn & N. Y. Ferry Co.,* 196 N. Y. 99.) VIII. There was no duty to adopt the costlier procedure for formal dissolution, liquidation or adjustment of corporate obligations. (*McNeal* v. *Hayes Mach. Co.,* 118 App. Div. 130; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Kroger* v. *Jaburg,* 231 App. Div. 641; *Hayman* v. *Brown,* 176 Misc. 176; *Brock* v. *Poor,* 216 N. Y. 387; *Matter of Clark,* 257 N. Y. 487; *Curran* v. *Oppenheimer,* 164 App. Div. 746, 222 N. Y. 615; *Levin* v. *Mayer,* 86 Misc. 116; *Howe* v. *Boston Carpet Co.,* 16 Gray [Mass.] 493; *Holmes & Griggs Mfg. Co.* v. *Holmes & Wessell Metal Co.,* 127 N. Y. 252.) IX. Assuming the responsibility for the sale rested upon appellants as officers and directors as distinguished from stockholders, there is no basis for liability in view of the lack of fraud, bad faith or personal gain. (*Turner* v. *American Metal Co.,* 268 App. Div. 239.) X. The business judgment rule is applicable. (*McQuade* v. *Stoneham,* 263 N. Y. 323; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Billings* v. *Shaw,* 209 N. Y. 265; *Bliss* v. *Matteson,* 45 N. Y. 22; *Flynn* v. *Brooklyn City R. R. Co.,* 158 N. Y. 493.) XI. If appellants were mistaken as to their right and power to cause the sale to be conducted, they cannot be held liable. (*Sheldon Hat Blocking Co.* v. *Eickmeyer Hat Blocking Mach. Co.,* 56 How. Prac. 70, 90 N. Y. 607; *City Nat. Bank of Huron, S. D.,* v. *Fuller,* 52 F. 2d 870; *Matter of Smith,* 279 N. Y. 479; *Matter of Stupack,* 274 N. Y. 198; *Simon* v. *Socony-Vacuum Oil Co.,* 179 Misc. 202, 267 App. Div. 890; *Michelsen* v. *Penney,* 135 F. 2d 409; *Seymour* v. *Spring Forest Cemetery Assn.,* 4 App. Div. 359, 157 N. Y. 697; *Cass* v. *Realty Securities Co.,* 148 App. Div. 96, 206 N. Y. 649; *Levin* v. *Mayer,* 86 Misc. 116.) XII. Appellants did not violate the provisions of section 60 of the General Corporation Law. XIII. No

damages were sustained by respondent nor was any proof offered with respect thereto. (*Curran* v. *Oppenheimer,* 164 App. Div. 746, 222 N. Y. 615; *Buckley* v. *Stansfield,* 155 App. Div. 735, 214 N. Y. 679; *Standard Nat. Bank* v. *National Silk Label Co.,* 30 Misc. 219, 70 App. Div. 46; *Van Schaick* v. *Carr,* 170 Misc. 539; *Brown Packing Co.* v. *Lewis,* 185 Misc. 445; *Trustees of Masonic Hall* v. *Fontana,* 99 Misc. 497; *Newman* v. *Meisel-Galland Co.,* 143 Misc. 494; *Pennsylvania R. R. Co.* v. *Peddrick,* 234 F. 781; *Di Tomasso* v. *Loverro,* 250 App. Div. 206, 276 N. Y. 551; *Gallin* v. *National City Bank of N. Y.,* 152 Misc. 679; *Van Schaick* v. *Aron,* 170 Misc. 520.) XIV. The prices realized at the auction sale establish the value of the assets. (*Parmenter* v. *Fitzpatrick,* 135 N. Y. 190; *Almy* v. *Simonson,* 52 Hun 535; *Halpern* v. *Grabosky,* 296 Pa. 108; *Matter of Kansas City Journal-Post Co.,* 144 F. 2d 791.)

*Benjamin Weintraub* and *Eugene N. Sosnoff* for respondent. I. Regardless of their honesty or good faith, the directors of W. F. Irish Co., Inc., are liable under section 60 of the General Corporation Law for any loss caused creditors as a result of the winding up of the corporation without notice to creditors and without following any statutory method for the protection of creditors. (*Darcy* v. *Brooklyn & N. Y. Ferry Co.,* 196 N. Y. 99; *Hurd* v. *New York & Central Steam Laundry Co.,* 167 N. Y. 89; *Buckley* v. *Stansfield,* 155 App. Div. 735; *Shalek* v. *Jetter,* 171 App. Div. 364; *Lawrence Leather Co.* v. *Milgrom,* 151 Misc. 609.) II. Appellants' arguments do not refute respondent's case. (*Elyea* v. *Lehigh Salt Mining Co.,* 169 N. Y. 29.) III. Reliance upon advice of counsel does not in this case shield appellants from liability. (*Brown* v. *Fidelity Union Trust Co.,* 135 N. J. Eq. 404; *Matter of Van Alstyne,* 27 App. Div. 427.)

CONWAY, J. This is an appeal by the defendants from an order of the Appellate Division, First Department, which reversed, on the law, a judgment of dismissal of the complaint on the merits after trial and ordered a new trial solely for the purpose of assessing plaintiff's damages. Each of the defendants has stipulated for judgment absolute in the event of affirmance.

The action is by the trustee in bankruptcy of W. F. Irish Co., Inc., under section 60 of the General Corporation Law, against

the two defendants, who are the officers, directors and holders of 100% of the stock of the corporation, to compel them to pay the value of property which, it is alleged, they have wasted through neglect of or failure to perform their fiduciary obligations.

Section 60, insofar as relevant, provides:

" An action may be brought against one or more of the directors or officers of a corporation to procure judgment for the following relief or any part thereof:     *     *     *

" 2. To compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or other violation of their duties."

The defendants purchased the corporation, which was engaged in business as a wholesaler of electrical supplies, in July of 1947. During the five months beginning with August of 1948 the business of the corporation fell off sharply. By November or December of 1948, defendants realized that they could not continue business under the conditions then prevailing. Operations were being carried on at a loss, although the balance sheet indicated an excess of assets over liabilities and merchandise was never sold below cost. By January of 1949 merchandise creditors were pressing for payment, sales were dropping to a point where the losses were increasing each week, although all expenses had been cut to the limit and the corporation was no longer able to meet its obligations as they matured. Defendants, therefore, concluded that it was best to wind up the affairs of the corporation.

Several possible courses of action were open to defendants. A loan of a sufficient sum of money would have enabled the corporation to carry on further. Defendants sought to borrow money between October, 1948, and February, 1949, without success. They were also unsuccessful in their attempt to sell part of their interest in the corporation to procure additional working capital. A common-law extension or settlement or an arrangement under chapter XI of the Bankruptcy Act would have given them a respite. However, their inability to raise any additional funds, and their then business condition, in the

opinion of their attorney, ruled out the common-law extension or settlement and the possibility of obtaining an extension from their creditors under chapter XI. Defendants could have filed a petition in bankruptcy or entered into an assignment for the benefit of creditors pursuant to the provisions of the Debtor and Creditor Law, section 3 *et seq.* Finally, it might have been possible for them to have dissolved under section 105 of the Stock Corporation Law.

Had they sought the aid of the bankruptcy court or assigned for the benefit of creditors under the Debtor and Creditor Law there would have been supervision and control by a court. Nevertheless, no statute and no decision of our courts required the defendants to adopt either of those methods or any of the other common-law or statutory methods suggested above. The defendants were free to liquidate the assets as they saw fit with a view to the eventual dissolution of the corporation, and despite the fact that the creditors were primarily concerned with defendants' activities in this respect, defendants were under no obligation to give notice to each creditor of their intention to convert the assets into cash. However, they were obligated to obtain for the corporation the full value of the assets as of that period under the circumstances.

The defendants elected to liquidate by conducting a public auction sale.

If the corporation was insolvent at that time it is clear that defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate creditor-beneficiaries (see 3 Fletcher's Cyclopedia Corporations, § 849). If the corporation was then technically solvent but insolvency was approaching and was then only a few days away, defendants, as officers and directors, were, in effect, trustees by statute for the creditors by virtue of section 60 of the General Corporation Law which obligated them to protect the trust *res* for the creditors and to account for waste in not obtaining full value for the *res*, if there was any waste by reason of their conduct.

On Sunday, February 6, 1949, an advertisement of the proposed sale appeared in the *New York Journal American* and on Monday and Tuesday in the *New York Herald-Tribune*. The advertisements contained the words '' LIQUIDATION SALE '',

the name of the auctioneer, the subject matter of the auction (the assets), and the address at which the assets to be sold were located, viz., 265 West 40th Street near 8th Avenue, New York City. That happened to be the address where the business of W. F. Irish Co., Inc., was conducted. They did not contain the name of the owner of the assets. In addition to the advertisements 1,000 postcards were mailed to electrical jobbers, wholesalers, retailers and buyers although not to any of the creditors interested here. The postcards contained only the same information as the advertisements. The creditors of the corporation were not given notice, except as they may be charged with notice by reason of the advertisement, of the address at which the assets were to be sold.

The estimated value of the inventory as of December 31, 1948, as shown on the corporation's balance sheet, was $73,492.21, and by defendants' admission had a cost value of at least $60,000 on February 4, 1949. It was also admitted by defendants that on the latter date the claims of creditors aggregated at least $52,000. The gross proceeds of the auction sale, held on February 8, 1949, were $23,262.33. The expenses for labor and advertising and the commissions of the auctioneer, selected by defendants, totaled $3,395.35, leaving a net of $19,866.98.

Three days after the sale an involuntary petition in bankruptcy was filed against the corporation and it was adjudicated a bankrupt. Respondent was, thereafter, elected the trustee in bankruptcy, and the sum of $19,866.98 was turned over to it.

The creditors, through the trustee in bankruptcy, have come forward and by their complaint charge that defendants '' wasted and dissipated the aforementioned assets and trust funds by their neglect of and failure to perform their duties '' to protect the *res,* among other charges, in that (1) '' On or about February 4, 1949, said defendants entered into an agreement with [the auctioneer] entrusting the aforementioned assets to him and directing him to conduct an auction sale of said assets, without restriction, as to the manner or proper conduct of said sale '', and (2) '' That said defendants exercised no supervision or control over said liquidation of the assets, took no active part in said sale, did nothing to insure

the success of the sale, but left the entire process in the hands of a stranger to the corporation.'' Plaintiff asserts that it made out a prima facie case by showing that the defendants sold assets having a book value of $73,492.21 and a cost value of at least $60,000 for the sum of $23,262.33, realizing only $19,866.98 after the expenses of the sale were deducted. The plaintiff contends that prima facie the assets would have brought an amount at least equal to the claims on a proper sale or orderly liquidation of the business, and that upon that showing the burden was upon the defendant-fiduciaries to go forward with evidence to establish that the full value of the assets was realized.

Defendants, on the other hand, urge that they were under no such onus and that the burden rested upon plaintiff to show that full value was not obtained. In support of their claim that plaintiff failed to sustain the burden of proof imposed upon it defendants point to the fact that the trial court found that the '' evidence at the trial failed to disclose any fraud by either of the two defendants, nor has the evidence shown in any way that the defendants profited from the liquidation of the assets. Plaintiff also failed to show that the goods sold at the auction were sold for less than their fair value at a *sale of that character.*'' (Emphasis supplied.)

Of course the fact that a beneficiary is unable to disclose any fraud committed against him by his fiduciary or that the fiduciary personnally profited from a liquidation of the assets equitably belonging to the beneficiary does not necessarily absolve the fiduciary from liability.

We have had occasion to point out the nature of the obligation resting upon fiduciaries which is applicable to those, such as defendants, who are, in effect, trustees. (*Meinhard* v. *Salmon,* 249 N. Y. 458, 464.) There we said: '' Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions (*Wendt* v. *Fischer,* 243 N. Y. 439, 444).'' We have also pointed out that '' questions of bad faith as matters of fact '' may be absent from a case and yet '' breaches of duty as matters of law '' may be present. (*Matter of Ryan,* 291 N. Y. 376, 386.) Quasi

trustees must be held to accountability for the performance of obligations thrust upon them by circumstances. The safety and protection of the trust *res* is of primary significance. If the assets — the trust fund for the creditors — were actually improvidently wasted or depleted as a result of defendants' unilateral action the plaintiff is entitled to recover the amount of the loss thus sustained. If, on the other hand, the assets were not thus wasted or depleted the defendants are not liable. Defendants are not to be cast in judgment solely because they neglected to give creditors notice of the sale.

Prima facie the assets in this case could have been sold for a sum of money sufficient to satisfy the creditors. As a matter of fact there was realized but $19,866.98, considerably less than half the sum owed to creditors. The creditors were not given individual notice of the sale and had no opportunity to protect their interests. While it is true, as earlier stated herein, that notice to the creditors was not required, nevertheless, the failure to so notify the persons primarily interested in the assets requires the imposition, in this statutory action for waste, upon the defendants of the burden of going forward to show that their action in selling the inventory at public auction resulted in obtaining full value under the circumstances in which they found themselves and did not occasion an improper or improvident depletion of the trust *res*. Defendants are the only ones who can furnish the information. The defendants should not be relieved of that burden of going forward on the present state of the record, even if, indeed, their action was prompted by a good motive, viz., to liquidate in an inexpensive manner. The burden of establishing the cause of action on the whole case, of course, remains upon the plaintiff.

The Appellate Division has ordered a new trial " for the purpose of assessing plaintiff's damages ", there being no dispute as to facts. The Appellate Division has, thus, afforded defendants an opportunity to account for their handling of the *res* in the matter of the sale and to show that full value was realized for the assets upon the sale and that, therefore, the creditors did not sustain a loss by virtue of the defendants' action. That court has determined that the defendants are obligated to " account and respond in damages for the amount.

if any, by which less than full value was realized upon the sale '' (278 App. Div. 501, 504) and all available evidence on the subject of value is to be received on the trial. In our opinion that was a proper disposition of the matter. That must still be done although the defendants have stipulated for judgment absolute. As yet there has been no finding by any court after proper proof as to whether the creditors suffered any damage and, if they did, in what amount.

The order should be affirmed, and judgment absolute ordered against appellants on the stipulations, with costs in all courts.

DESMOND, J. (dissenting). We dissent, since we know of no theory of law under which directors, on facts like these, can be held liable or accountable to their corporation's creditors. There is in the case no showing of fraud or bad faith, no self-dealing or diversion of assets, no violation of any statute, and, therefore, no applicability of any of the decisions cited in the majority opinion of this court, in the opinion of the Appellate Division, or in the briefs filed here by respondent.

Faced with operating losses, poor market conditions, pressure from creditors, and inability to borrow, the corporation, in early 1949, found that it could not continue its merchandising business. Defendants, its sole stockholders and directors, consulted an attorney, who described to them various methods of liquidation, including a sale at auction of the corporation's merchandise. That method defendants chose. They hired a licensed auctioneer, who advertised the event by newspaper advertisements and by postcards mailed to about a thousand persons or firms in the same or similar lines of business (not including the corporation's creditors), and who conducted the sale, which produced gross proceeds of about $23,000 and a net return of just under $20,000, for merchandise which had been carried on the corporation's books at its gross cost price of about $60,000. Three days later, the corporation's creditors, to whom it owed about $52,000, petitioned it into bankruptcy, and plaintiff-respondent, after its election and qualification as trustee in bankruptcy, and after the net proceeds of the auction had been turned over to it by defendants, brought this suit.

Those are the facts, undisputed and found by both courts below. Defendants committed no actionable wrong of any

sort, and were entitled to judgment of dismissal, on the merits. At very worst, they were guilty of an error of judgment, but for that the law provides no punishment or remedy. "If a director exercises his business judgment in good faith on the information before him, he may not be called to account through the judicial process, even though he may have erred in his judgment" (*Rous* v. *Carlisle,* 261 App. Div. 432, 434, affd. 290 N. Y. 869). "That is true even though the errors may be so gross that they may demonstrate the unfitness of the directors to manage the corporate affairs" (*Everett* v. *Phillips,* 288 N. Y. 227, 232). "The law will not permit a course of conduct by directors, which would be applauded if it succeeded, to be condemned with a riot of adjectives simply because it failed. Directors of a commercial corporation may take chances, the same kind of chances that a man would take in his own business. Because they are given this wide latitude, the law will not hold directors liable for honest errors, for mistakes of judgment" (SHIENTAG, J., in *Bayer* v. *Beran,* 49 N. Y. S. 2d 2, 6; see, also, *Leslie* v. *Lorillard,* 110 N. Y. 519, 532; *Winter* v. *Anderson,* 242 App. Div. 430, 432; *Kalmanash* v. *Smith,* 291 N. Y. 142, 155; Rosbrook, New York Corporation Manual, § 314).

The theory of the recovery here seems to be: that these directors "wasted" the corporate assets, and so became subject to suit under subdivision 2 of section 60 of the General Corporation Law. But "waste", as that verb is used in this and similar statutes, has a fixed meaning, limited to acts which are illegal, fraudulent or done in such bad faith as to amount to fraud (see *Bosworth* v. *Allen,* 168 N. Y. 157, 165, 166; *Mason* v. *Henry,* 152 N. Y. 529; *Gilbert* v. *Finch,* 173 N. Y. 455; *Lonas* v. *Layman Pressed Rod Co.,* 242 App. Div. 444, affd. 269 N. Y. 529; *Bassellin* v. *Pate,* 30 Misc. 368, 373, HISCOCK, J.; *Cottrell* v. *Albany Card & Paper Mfg. Co.,* 142 App. Div. 148, 151 *et seq.*; *Hazard* v. *Wight,* 201 N. Y. 399, 403; *Talcott* v. *City of Buffalo,* 125 N. Y. 280, 288; *Ayers* v. *Lawrence,* 59 N. Y. 192, 197). We find no case, and none is cited to us, where directors have been held liable to creditors for waste, merely because of their use, in good faith but doubtful wisdom, of their own business judgment. Hindsight may be better than foresight for some purposes, but not as a basis for imposition of liability in a court of law (*Purdy* v.

*Lynch,* 145 N. Y. 462, 475, 476; *Costello* v. *Costello,* 209 N. Y. 252, 262).

Aside from accusations of mere unwisdom, the only specifications of " illegality " put forward here are these: that defendants gave the creditors no notice of the sale, that defendants themselves did not conduct the sale, and that they failed to carry out the permissive statutory procedures for corporate dissolution, or bankruptcy, or assignment for benefit of creditors. As to each of these, we can say only that there is no requirement of law for such action by directors.

A word as to the " trust fund doctrine ". Whatever be " the uncertain limits of that much debated theory as understood and applied in New York " (*Barr & Creelman Mill & Plumbing Supply Co.* v. *Zoller,* 109 F. 2d, 924, 927, 928), it never includes more than this: that the property of a corporation is a trust fund for the payment of all its debts, and its creditors, therefore, have an equitable lien thereon and the right to priority of payment over all stockholders (*Wood* v. *Dunmer,* Fed. Cas. No. 17,944; *Bartlett* v. *Drew,* 57 N. Y. 587, 589; *Ward* v. *City Trust Co.,* 192 N. Y. 61, 74; *Reif* v. *Equitable Life Assur. Soc.,* 268 N. Y. 269, 276). The doctrine or theory has, therefore, nothing whatever to do with this case.

The judgment of the Appellate Division should be reversed, and the complaint dismissed, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, DYE and FROESSEL, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Order affirmed, etc.