Henry Epstein, J.
A small group of policyholders in defendant Equitable Life Assurance Society of the United States have brought several actions which have been consolidated in the instant complaint. This action, once dismissed for lack of prosecution, had been restored (12 Mise 2d 630 )and is now before this court for determination on the basis of pleadings, examinations before trial, exhibits introduced at said examinations and arguments, oral and via briefs. In the two causes of action plaintiffs have sought to have Equitable recover from defendant’s officers, directors el al., substantial sums allegedly wasted through improper investment and expenditures. These included realty investments, apartment house construction, legal fees paid, architects’ expenses, construction costs and a variety of advertising expenses. At the opening of this case before the court all causes of action have been dropped with the sole exception of advertising commissions and expenses, allegations relating to which comprise paragraphs 1 to 19 of the consolidated and amended complaint. These deal solely with the claims relating to advertising placed through Courtney V. Parkinson, son of the then president of Equitable, Thomas I. Parkinson. Defendants’ motion addressed to the other claims was consequently *332 granted, reserving to the plaintiffs the claim for recovery based on the advertising expenses to the extent by which defendants Courtney V. Parkinson and C. Y. Parkinson Associates may have benefited. Likewise on counsel for plaintiffs’ statement that no evidence was to be presented against B. E. Dowling and B. E. Dowling Bealty Corp, the motion to dismiss as to them was also granted.
Between 1949 and 1951 substantial advertising on behalf of Equitable was placed through and' with Courtney Y. Parkinson and C. Y. Parkinson Associates. Based on such advertising the newspapers, magazines, and other media used paid to said Courtney Y. Parkinson and his associated company the customary commissions. These may have in said period totaled a sum approximating $200,000. Courtney was the son of defendant Thomas, president of Equitable. When, in 1951, a director of Equitable, George Y. McLaughlin, raised the question of the propriety of the president’s son receiving the advertising benefits of the program initiated at his instance, the employment was discontinued and this action soon followed. Of the 40 directors about 5 have been served and with defendants C. Y. Courtney and C. Y. Courtney Associates Inc. comprise all defendants who were served out of some 63 named. After 6 years and a number of actions brought in State and Federal courts, this seems to be the last undisposed of. Justice Markewich dismissed the complaint in the action of Garfield v. Equitable Life Assur. Soc. of U. S. (16 Misc 2d 296) dealing with a building project in Pittsburgh, Pa. Equitable has some 2,400,000 policyholders and assets of over $6,000,000,000. Plaintiffs number 9 and their policies aggregate about $10,000 or less than 1/2000 per cent of the voting interest, and less than 1/600,000th of the defendant’s company assets. The sole remaining cause of action relates to fees earned by defendant Parkinson Associates from advertising placed through it from 1949 to 1951 and to press releases and articles through the Continental Press (a syndicate) owned by defendant Courtney Y. Parkinson. Any possible liability of defendant directors herein must be measured by the principles established in Blaustein v. Pan American Petroleum & Transp. Co. (263 App. Div. 97, affd. 293 N. Y. 281) and Van Schaick v. Aron (170 Misc. 520, 534). Wliere no damage to the corporate defendant (here the Equitable itself) can be shown, no recovery will be allowed. Close scrutiny of relationships between directors and third persons is called for, but unless transactions are established to have been harmful to the *333 corporation, no liability will attach to directors (Bayer v. Beran, 49 N. Y. S. 2d 2).
The substance of plaintiffs’ charge is that Parkinson Associates, organized and owned by Courtney V. Parkinson in 1947, had little advertising or public relations experience and that it was wasteful of Equitable’s assets to change from J. Walter Thompson agency, an old firm, to the novice owned by T. I. Parkinson’s son. As part of its proof plaintiffs point to the advertising expenses annually of Equitable before 1948 approximating $100,000, 1949 —$185,000, 1950 — $810,000 and in 1951 about $1,000,000 increases. The important years are those of C. Y. Parkinson’s activities, 1948-1950. The records of the Insurance Department of New York State, publicly available by law (Insurance Law, § 26; Civ. Prac. Act, § 344-a) reveal the advertising costs of Equitable to be substantially less than those of Metropolitan and Prudential, its chief competitors. Those records also show substantial increases, but not adverse to Equitable, particularly when a major portion of Equitable’s expenditures are analyzed.
Equitable 1948— $1,342,344.31 1949— 1,613,432.40 1950— 2,030,479.15 Metropolitan $2,936,141.26 3,126,850.28 3,082,678.25 Prudential $2,856,862.40 2,970,651.19 2,834,468.49
An advertising agency, Warwick & Legler, not complained of herein by plaintiffs, received from Equitable in 1948, $1,027,-429.75 of the above total for 1948; $1,128,858.04 of the above total for 1949; and $1,166,671.90 of the above total for 1950. Thus the alleged excessive cost to Equitable is nullified and even more so when considering the housing projects whose advertising was handled by defendant C. V. Parkinson Associates. A study of the advertisements, of the written material of the president’s reports and their format — offers no evidence to support plaintiffs’ charges. No proof of excessive charges for the printing done, or for the advertising undertaking is established. If anything, the reverse is true. For a period of 6 years the printing total of $49,565 to the Continental Press is most reasonable. Whatever the profit derived from this gross payment, whether 15 or 30% — it cannot be said to warrant the conclusion plaintiffs draw. Nor does the comparison made by plaintiffs between the J. Walter Thompson agency’s costs for 1946-1948 and those of defendant Parkinson Associates for 1949-1951 enlighten us. It is in this period that the rural *334 advertising campaign in the middle and far west, recommended by Parkinson, was undertaken. In the same six-year period, which covers 1946-1951 the number of policyholders and group insurance certificates of Equitable rose:
1946 — 3,500,000 1947 — 3,900,000 1948 — 4,150,000 1949 — 4,350,000 1950 — 4,750,000 1951 — 5,100,000
The advertising undertaking by C. V. Parkinson and O. V. Parkinson Associates was approved by the director of such policy in Equitable, Colonel Shope. This followed withdrawal from the joint advertising with other companies through Life Institute of America which had cost about $500,000 a year. Young Parkinson had been reared by his father in an atmosphere wherein he breathed life insurance. The fact, so stressed by plaintiffs’ counsel, that he was not a college graduate, is not impressive. He was near the top of his class at Horace Mann High School, became proficient in three foreign languages, self-taught, and after being turned down for physical reasons for war duty, undertook the program proposed by him to Equitable through T. V. Parkinson, it's president. His travel expenses were quite nominal and his retainer for 1948 was $2,500. The retainer for 1949 of $2,400 was refunded in view of the earnings from advertising. Young’ Parkinson rang doorbells in rural parts of Colorado and the Far West in the course of his study of the rural areas available for promoting Equitable’s interests. The attempt of counsel for plaintiffs to bring the substance of this action within the scope of subdivision 4 of section 78 of the Insurance Law falls flat. The earnings of young Parkinson from customary commissions on advertising placed through him or his agency can hardly be called a “ property ” advantage to his father, the president of Equitable.
There are certain general principles established by the cases which are applicable to the facts herein. Liability of corporate directors must be based on acts of knowledgeable commission or omission from which loss can be clearly shown or damage to the principal (People v. Equitable Life Assur. Soc., 124 App. Div. 714, 730-731; Holmes v. Crane, 191 App. Div. 820, 826; Garfield v. Equitable Life Assur. Soc., 16 Misc 2d 214, 216). The burden of proof rests upon the plaintiffs to make out a case. That has not been done in the records of the examinations before trial and the exhibits submitted to this court *335 (New York Credit Men’s Adj. Bur. v. Weiss, 305 N. Y. 1, 10; Bayer v. Beran, 49 1ST. Y. S. 2d 2, supra). Nor can this court subscribe to plaintiffs ’ argument that ‘ ‘ whether * * * C. Y. Parkinson did an adequate or even a superlative job is immaterial”. The father-son relationship does not of itself create a liability (Siegman v. Maloney, 65 N. J. Eq. 372, 374; Bayer v. Beran, supra, pp. 9-10). Not the slightest proof is offered, nor can any inference be drawn that Thomas I. Parkinson either had a financial interest in or derived any profit from his son’s services. The charges that defendant Equitable’s president sought to have “ Equitable subsidize his son ” finds no support in the record. Analysis of the testimony and the advertising copy in connection therewith does not warrant the criticism indulged in by plaintiffs anent “ Group Pension Advertising”, Fordham Hill housing project, or the Pittsburgh, Pa., project. So, too, careful study of Exhibits 1 through 22 does not support plaintiffs’ extravagant charges and conclusions. One fact remains outstanding —the commissions earned by young Parkinson and his company, almost all paid by the advertising media, newspapers and magazines, were at customary rates and did not cost the Equitable one cent more than if placed through any other agency. Nor is there any basis for a conclusion that such expenditures were excessive, duplicatory or unnecessary or that the material so used was either in content or format, inferior to top standards.
Directors are called upon to give a fiduciary’s care to their duties; to loyally promote the interest of their company (Clifford v. Metropolitan Life Ins. Co., 264 App. Div. 168; Blaustein v. Pan American Petroleum & Transp. Co., 293 N. Y. 281, supra; Ballantine, Corporations, § 63a; Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 124).
The complaint has not been sustained. Findings and conclusions have been waived. Complaint dismissed on merits, but without costs. Settle judgment.