**Philip M. STERN**

v.

**FEDERAL ELECTION COMMISSION.**

No. 89–5377.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1990.

Decided Dec. 11, 1990.

---

Whitney North Seymour, Jr., New York City, for appellant.

Vivien Clair, Attorney, Federal Election Com'n, with whom Lawrence M. Noble, General Counsel, and Richard B. Bader, Associate General Counsel, Federal Elec-

tion Com'n, Washington, D.C., were on the brief, for appellee.

Before: MIKVA, SILBERMAN, and HENDERSON *, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Philip Stern alleges that the General Electric Company ("GE" or "the Company") violated the Federal Election Campaign Act of 1971 ("FECA" or "the Act"), 2 U.S.C. §§ 431–455 (1988), in making unlawful corporate expenditures for the establishment, administration, and solicitation of contributions to its segregated political fund. The appellee Federal Election Commission ("FEC" or "the Commission") dismissed Stern's administrative complaint, and, on review, the district court entered judgment on the pleadings for the Commission. We affirm the district court's decision.

I.

Section 441b of the Act prohibits corporations from making contributions or expenditures "in connection with any election." 2 U.S.C. § 441b(a). Section 441b(b)(2)(C), however, specifically excludes "the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation" from the definition of "contribution or expenditure." 2 U.S.C. § 441b(b)(2)(C). In 1975, GE established such a separate segregated fund, known as the "Non–Partisan Political Support Committee for General Electric Employees," or "GE/PAC."

Stern, a GE shareholder, claims that GE/PAC made improper expenditures for lobbying purposes instead of the sanctioned "political purposes" of section 441b(b)(2)(C) during the 1985–86 election cycle. According to Stern, these improper expenditures by GE/PAC rendered the Company's administrative support of the fund unlawful under section 441b(a). Spe-

---

* Circuit Judge Henderson was originally a member of the panel but found it necessary to recuse herself from the case after oral argument; she did not participate in this opinion.

cifically, Stern objects to the following GE/PAC practices: (1) contributions to candidates facing weak opposition or none at all; (2) contributions made without regard to candidates' attitudes towards business; (3) contributions to two or more candidates in the same race; (4) post-election contributions to winners; and (5) support of incumbents.

Stern first filed suit against GE in 1986 in federal district court in New York; the district court dismissed the complaint, concluding that it fell within the exclusive jurisdiction of the Commission. In 1988, Stern filed an administrative complaint with the Commission; the Commission dismissed the complaint on the General Counsel's recommendation, finding "no reason to believe" that violations of sections 441b(a) or 441b(b)(2)(C) had occurred.

Stern sought judicial review of the Commission's decision in the United States District Court for the District of Columbia. The court deemed it unnecessary to reach the statutory question of whether lobbying was a permitted activity for segregated funds such as GE/PAC, although it noted an inclination to uphold the FEC's interpretation, under which segregated funds could be used "for any lawful purpose." *Stern v. Federal Election Comm'n*, Civ. No. 89–0089, Memorandum Opinion at 6–7 (D.D.C. August 31, 1989) (hereinafter "Mem. Op."). The court granted the Commission's motion for judgment on the pleadings, holding that "[t]he GE/PAC funds at issue were expended as direct contributions to the campaign committees of legitimate federal candidates," Mem. Op. at 7–8, and were therefore permissible under any construction of "political purposes" in section 441b(b)(2)(C).

## II.

■ We note at the outset that our analytical task would have been greatly simplified if counsel for the Commission had been prepared at oral argument to address the relevant statutory schemes, most notably the interrelationship of FECA and the Federal Regulation of Lobbying Act (FRLA). *See* 2 U.S.C. §§ 261–270 (1988). Nevertheless, like the district court, we

find no reason to reach the question of how broadly the phrase "political purposes" in section 441b(b)(2)(C) of FECA should be construed. Even under the narrowest possible definition urged by Stern—namely, that segregated funds may be used only "in connection with an election"—the GE/PAC practices he challenges do not violate the Act.

1. *Contributions to candidates facing weak opposition or none at all.* Stern challenges GE/PAC's support of unopposed candidates, arguing that the contributions served "no political purpose whatsoever in bringing about the[ir] re-election." Similarly, Stern challenges GE/PAC's support of candidates who had won their last four elections by at least three-to-one margins, and could thus be "predicted to coast to easy victories." One need only review recent election results to realize how whimsical predictions of "easy victory" may prove. Furthermore, nothing in the Act suggests that the legitimacy of campaign contributions varies with the closeness of the race. In fact, FEC regulations specifically contemplate contributions to unopposed candidates. *See* 11 C.F.R. § 110.2(i)(2), (3) (1990) ("An election in which a candidate is unopposed is a separate election for the purposes of the limitations on contributions of this section.").

2. *Candidates' attitudes towards business.* Stern next challenges contributions that he claims were made without regard to candidates' attitudes towards business, as measured by U.S. Chamber of Commerce approval ratings. Specifically, Stern seems to argue that when GE/PAC supports a candidate who is less "pro-business" than his opponent, the contribution is presumptively unlawful because that candidate's election could not advance GE's interests. This claim borders on the frivolous. As the district court noted, "a low approval rating from the Chamber of Commerce, or any other interest group, may be totally irrelevant to a particular candidate's political attractiveness to GE/PAC." Mem. Op. at 8 n. 5. Nothing in the Act requires segregated funds to advance particular ide-

ological interests through their expenditures.

3. *Contributions to opposing candidates.* Stern challenges GE/PAC's contributions to opposing candidates in the same election. However, GE/PAC is a "multicandidate committee," which by definition must contribute to five or more federal candidates. *See* 11 C.F.R. § 100.5(e)(3). Nothing in the statute or regulations prohibits a multi-candidate committee such as GE/PAC from making contributions to a variety of candidates, including candidates who oppose one another. Insofar as Stern worries that opposing contributions will facilitate "influence-purchasing," we note that the stringent contribution limits on multi-candidate committees minimize the effect of any single contributor, 2 U.S.C. § 441a(a)(2)(A) ($5,000 limit per candidate per election), and that disclosure requirements would inform a candidate of the fund's non-exclusive support. *See* 2 U.S.C. § 434(b)(6)(B)(i) (requiring political committee to disclose payee and amount of disbursements).

4. *Post-election contributions to winners.* Stern challenges post-election contributions that GE/PAC made to "candidates who turned out to be winners." The Act and Commission regulations specifically contemplate post-election and non-election year contributions, however. *See, e.g.,* 2 U.S.C. § 441a(a)(3) (attributing contributions made in a year other than the calendar year of the election); 11 C.F.R. § 110.5(c)(1), (2). Such contributions are properly applied either to a candidate's outstanding campaign debt or to a future election. *See* 11 C.F.R. §§ 110.2(b)(2)(ii), 110.2(b)(3)(i). *See also* Advisory Opinion 1977–24, 1 Fed. Election Camp. Fin. Guide (CCH) ¶ 5260 at 10,207; Advisory Opinion 1985–5, 2 Fed. Election Camp. Fin. Guide (CCH) ¶ 5810 at 11,160. Thus, Stern has advanced no colorable claim under the Act. Moreover, the Act's aggregate contribution limits, *see* 2 U.S.C. § 441a(a)(2)(A) ($5,000 limit per candidate per election), and recent amendments prohibiting most members of Congress from using excess campaign funds for personal matters, *see* 2 U.S.C.A.

§ 439a (West Supp.1990), speak to the concerns underlying Stern's contention.

5. *Support of incumbents.* Finally, Stern objects to GE/PAC's support of incumbents in ninety-eight percent of the races to which it contributed. Again, this claim borders on the frivolous. There is simply nothing in the Act or regulations that makes contributions to incumbents improper. As discussed above, multi-candidate committees such as GE/PAC contribute to many legitimate candidates, and incumbents are certainly legitimate candidates. As the district court noted, GE/PAC "may have donated funds primarily to incumbents because incumbents tend to win elections." Mem. Op. at 8 n. 5. Stern's implicit suggestion that the Commission devise procedures to limit the number of incumbents that a segregated fund can support is nonsensical.

### III.

Appellant's concerns about federal election financing may raise interesting policy questions; however, he has advanced no credible legal arguments in this case. Appellant has simply failed to present facts suggesting that GE/PAC violated the Act or regulations, even assuming, as he urges, that the "political purposes" for which segregated funds may make expenditures are strictly limited. All of the challenged expenditures went to support legitimate federal candidates, and Stern has alleged no violation of the Act's express prohibitions. The decision of the district court granting the Commission's motion for judgment on the pleadings is thus

*Affirmed.*