Henry D. Sedgwick STERN and Walter B. Slocombe, Personal Representatives of the Estate of Philip M. Stern, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, John F. Welch, Jr., Lawrence A. Bossidy, Edward E. Hood, Jr., Richard T. Baker, James G. Boswell, II, Silas C. Cathcart, Charles D. Dickey, Jr., Lawrence E. Fouraker, Henry H. Henley, Jr., Henry L. Hillman, Robert E. Mercer, Gertrude G. Michelson, Barbara Scott Preiskel, Lewis T. Preston, Frank H.T. Rhodes, Andrew C. Sigler, and Walter B. Wriston, Defendants.

No. 86 Civ. 4055 (MJL).

United States District Court,
S.D. New York.

Nov. 16, 1993.

Brown & Seymour by Whitney N. Seymour, Jr., New York City, for plaintiffs.

Davis Polk & Wardwell by Thomas P. Ogden, New York City, for the individual defendants.

E. Scott Gilbert, Fairfield, CT, for Gen. Elec. Co.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court are cross-motions by plaintiffs Henry Stern and Walter Slocombe, personal representatives of the estate of Philip Stern ("Plaintiff")[1], and by defendants General Electric Company and certain current and former members of its Board of Directors ("Defendants"), for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

## BACKGROUND

This action challenges expenditures from the treasury of General Electric Company ("GE") in support of GE's political action committee. On May 21, 1986, Plaintiff, a shareholder of GE, filed this derivative action against GE and members of its board of directors[2] on behalf of himself and all others similarly situated. Both the procedural and substantive background of this diversity suit is set forth in the many prior opinions of this Court and the Court of Appeals.[3]

Plaintiff's original claims were dismissed by this Court. *See* footnote 3. However, Plaintiff was granted leave to replead claims pertaining to waste of corporate assets. Specifically, these claims are: (1) that GE realized no benefit from the activities of its political action committee, yet Defendants expended corporate assets to solicit contributions to and administer the committee, and (2) that the expenditures authorized by Defendants in support of the committee were excessive in relation to contributions collected. These claims revolve around the issue of waste of corporate assets.

The administrative expenses of the political action committee, the "General Electric Political Action Committee" ("GE/PAC")[4], are paid by GE. Plaintiff argues in his amended complaint that GE's operation of GE/PAC wastes corporate assets, violates GE/PAC's Articles of Association, and breaches Defendants' fiduciary duty to shareholders. Seven causes of action seeking relief under New York state law are set forth in the amended complaint. See page 75 of this Opinion, *infra*.

Plaintiff previously filed an administrative complaint with the Federal Election Commission ("FEC") challenging Defendants' expenditures in support of GE/PAC as unlawful in violation of the Federal Election Campaign Act. *See Stern v. Federal Election Comm'n*, 921 F.2d 296 (D.C.Cir.1990) (giving back-

---

1. Plaintiff's death was suggested upon the record on June 15, 1992, and representatives were substituted on his behalf pursuant to Fed.R.Civ.P. 25(a) by Endorsement dated August 18, 1992.

2. Defendant Welch is Chairman of the Board and Chief Executive Officer of GE; Defendants Hood and Bossidy are Vice Chairpersons and Executive Officers of GE; the remaining individual defendants are present and former outside directors.

3. The first such opinion was issued over six years ago when this Court granted Defendants' motion to dismiss Plaintiff's entire four-count complaint for failure to state a claim and for lack of subject matter jurisdiction. *See Stern v. General Elec. Co.*, 1987 WL 11166 (S.D.N.Y. May 14, 1987). Reargument of that decision was denied, *see* 1990 WL 37848 (S.D.N.Y. March 27, 1990), and

Plaintiff appealed. This Court's decision was affirmed in part and reversed in part with instructions that Plaintiff be granted leave to replead the two counts pertaining to waste of corporate assets. *See Stern v. General Elec. Co.*, 924 F.2d 472 (2d Cir.1991). Stern filed the amended complaint on April 24, 1991. Defendants again moved to dismiss for failure to state a claim. That motion was denied. *See Stern v. General Elec. Co.*, 1992 WL 8195 (S.D.N.Y. January 14, 1992).

4. GE/PAC is an unincorporated association of GE employees established in 1975 pursuant to the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431 et seq. ("FECA"), to collect and utilize funds for political purposes. Prior to 1990, GE/PAC was called the "Non-Partisan Political Support Committee for General Electric Employees."

ground). Plaintiff complained of: contributions to virtually unchallenged political candidates; contributions to opposing candidates; post-election contributions; contributions to incumbents; and contributions made to candidates regardless of their attitudes toward business. The complaint was dismissed by the FEC. Dismissal was upheld by the district court for the District of Columbia. The court of appeals for the District of Columbia affirmed, finding that GE/PAC complied with the FECA. The federal courts in D.C. found that, despite various policy arguments made by Plaintiff, contributions were lawfully made to legitimate federal candidates.

*Plaintiff's Claims and Supporting Facts*

The ultimate relief sought by Plaintiff is the prohibition of the use of corporate funds for the support of GE/PAC. *See* Verified Amended Complaint, p. 36. The present action complains of many of the same practices as did the complaint with the FEC; however, Plaintiff is not estopped from seeking relief under New York state law for waste of corporate assets. *See* Opinion and Order filed January 14, 1992, 1992 WL 8195.

Plaintiff's first major point of contention raised in this motion is that Defendants have operated GE/PAC in violation of its Articles of Association. A statement of the purposes of GE/PAC is set forth in Article II of its Articles of Association, which reads as follows:

> The purposes of the Committee are to support the nation's political processes and advance the nation's economic, social and political welfare by affording General Electric management personnel the opportunity to take a more active part in the political process by contributing funds to support candidates for federal office, national parties and state and local candidates where permissible under federal law....

Plaintiff contends that this Article sets forth three legal purposes of GE/PAC: (1) to support the nation's political process; (2) to advance the nation's economic, social and political welfare; and, (3) to afford GE's management personnel the opportunity to take a more active part in the political process. Plaintiff claims that Defendants have systematically violated each of these purposes, and

that expenditures in violation of the Articles constitute a waste of corporate assets.

Plaintiff alleges that GE/PAC has supported incumbents and avoided challengers, and that this discourages competitive elections. Defendants do not deny allegations that contributions to House and Senate incumbents have surpassed those to challengers by a ratio of twenty-five to one. Defendants admit that GE/PAC contributed to opposing candidates in the same political race, and that it contributed money to candidates facing only limited opposition. Senate incumbents were also given money in non-election years. GE/PAC has contributed to members of congressional committees with jurisdiction over legislation potentially effecting GE's business. GE/PAC has also contributed to incumbent Congress members who have voted against legislation potentially beneficial to GE. *See* Plaintiffs' Rule 3(g) statement, and Defendants' response. Plaintiff opposes the lobbying activity of GE/PAC, and claims that GE/PAC seeks to preserve party balance and build relationships, or buy influence, rather than change the composition of Congress.

Plaintiff's second major point of contention is that Defendants have attempted to conceal the true use of GE/PAC. He claims that GE/PAC is run by management in their lobbying efforts, and that this direct involvement has been concealed from shareholders. Plaintiff points to his counsel's January 30, 1986 demand to the Board of Directors to correct abuses in GE/PAC operations, and to the April 26, 1986 response from Walter Schlotterbeck, Senior Vice President, General Counsel, and Secretary of GE. Plaintiff feels that the April letter is misleading when it mentions that GE/PAC is composed of management personnel and not members of the Board of Directors or the Executive Office, and that GE/PAC operation reflects the decisions of its participants. Plaintiff argues that while no directors are on the GE/PAC committee, there are directors who are active participants in GE/PAC fundraising. Plaintiff further contends that fund distribution is controlled by lobbyists rather than participants.

Plaintiff also points to Defendants' handling of a 1988 shareholder proposal. In November of 1988, shareholders submitted a proposal to be voted on at GE's 1989 Annual Meeting. That proposal would have required the Board of Directors to report to shareholders the contributions to congressional candidates by GE/PAC. In December 1988, Eliza Fraser, a GE attorney, wrote to the Division of Corporation Finance of the Securities and Exchange Commission ("SEC") pursuant to Rule 14a–8(d) of the Securities Exchange Act of 1934 seeking concurrence with the Board's decision to omit the shareholder proposal from GE's proxy statement. Plaintiff claims that this is evidence of bad faith by the individual Defendants.

Plaintiff's third major point is that Defendants, as members of a "Public Responsibility Committee", have violated their fiduciary duty towards GE's shareholders. Plaintiff claims that Defendants have a duty to inquire into the propriety of corporate funding of GE/PAC's operations, but have ignored this duty. Specifically, Plaintiff alleges that Defendants have disregarded: the January 30, 1986 demand to the Board to correct abuses of GE/PAC; the operation of GE/PAC in violation of its Articles of Association; and the wasteful expenditure of corporate assets. This alleged violation of fiduciary duty is said to have resulted in a waste of corporate assets.

Finally, Plaintiff challenges the expenditure of corporate funds, allegedly in violation of GE/PAC's Articles of Association and the Internal Revenue Code, as constituting an improper use and a waste of corporate assets. The administrative expenses of political action committees are not deductible under the Internal Revenue Code. However, Plaintiff claims that GE has treated certain expenses as ordinary business expenses in violation of § 162(e)(2) of the Internal Revenue Code (1992). Plaintiff contends that Defendants should not be able to claim benefit arising from this alleged illegal behavior or from the alleged violations of the Articles of Association.

Plaintiff's first claim in his amended complaint seeks damages resulting from Defendants' policy of "influence-buying." The second, third, and fourth [5] claims seek relief from Defendants actions surrounding the 1988 shareholder resolution. The fifth claim seeks damages resulting from the alleged negligence and recklessness of Defendants in wasting corporate assets by supporting GE/PAC, which has contributed to the re-election of "anti-business, anti-defense incumbents." The sixth claim seeks punitive damages against outside directors who "have been guilty of gross willful and wanton negligence and of reckless disregard for shareholder rights and the corporation's best interests." The seventh claim seeks damages for the excessive expenditure of corporate assets in support of GE/PAC.

*Defendants' Claims and Supporting Facts*

Defendants counter that summary judgment is warranted in their favor as Plaintiff cannot prove that support of GE/PAC constitutes a waste of corporate assets—the only legal issue in this suit. They contend that instead of advancing legal arguments, Plaintiff, his expert [6], and his attorney are on a mission of campaign finance reform. Defendants claim that the annual expenses of GE/PAC represent a minuscule percentage of GE's annual revenues. In further defense of GE/PAC, they point to the prevalence of political action committees and the large amount contributed by them on the whole to election campaigns.

Defendants claim that GE derives significant benefits from GE/PAC, including: the opportunity for GE employees to become

---

5. The Fourth Cause of Action, "Fraud and Misrepresentation as to Voluntariness," specifically relates to the voluntariness of employee contributions to GE/PAC. This issue has no connection to the claim of waste of corporate assets. On March 4, 1992, Magistrate Judge Buchwald denied discovery as to this claim, and her decision was affirmed by this Court. *See* Opinion and Order filed June 4, 1992, 1992 WL 138339.

6. Plaintiff's proposed expert witness, Larry Makinson ("Makinson"), has been requested by Plaintiff to analyze the patterns of contributions made by GE/PAC, and has prepared a detailed, twenty-six page report to this effect. Makinson is the Research Director of the Center for Responsive Politics, a group which specializes in the study of Congress and the effect of financing on elections and political activities.

involved in the political process; the education of these employees on government relations; the election of candidates willing to entertain the corporation's position on issues important to it; and the enhancement of GE's ability to communicate those positions to Congress. GE contends that its government relations would be harmed if its support of GE/PAC were terminated.

The parties have engaged in extensive discovery under the supervision of Magistrate Judge Naomi Reice Buchwald. Pursuant to a directive from Magistrate Judge Buchwald, the parties entered into a "stipulation for motion purposes as to the administrative costs involved in the solicitation of funds" by GE/PAC. Letter of March 4, 1992 from Magistrate Judge Buchwald to all counsel. In that Stipulation of GE/PAC Expenses, dated February 25, 1993, costs of the administration of GE/PAC and the solicitation of GE/PAC funds from 1983 through 1990 were set at nearly $231,000 per year. Defendants claim that these amounts are "trivial in relation to the size of GE's overall operations." Memorandum of Law in Support of Defendants' Cross–Motion for Summary Judgment, at 13. *See also* Defendants' Statement Pursuant to Local Civil Rule 3(g), at ¶ 11.

## DISCUSSION

■ A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts are to be viewed favorably to the nonmovant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). The moving party must initially demonstrate the absence of a genuine issue of material fact. *Adickes,* 398 U.S. at 159, 90 S.Ct. at 1609. This burden may be discharged as to issues on which the nonmoving party bears the ultimate burden by showing an absence of evidence in support of essential elements of that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.

1991). The nonmoving party must then, pursuant to Rule 56(e), come forward with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

*Waste of Corporate Assets*

The central issue of this action, and the issue on which Plaintiff was granted leave to replead, concerns the alleged waste of corporate assets, as defined in New York, by Defendants resulting from their support of GE/PAC. "[T]he essence of waste is the diversion of corporate assets for improper or unnecessary purposes." *Aronoff v. Albanese,* 85 A.D.2d 3, 446 N.Y.S.2d 368, 370 (2 Dept. 1982) (citing *Michelson v. Duncan,* 407 A.2d 211, 217 (Del.1979)). Whether an expenditure is wasteful depends on whether the corporation benefits from it which, "in turn, is generally committed to the sound business judgment of the directors" of the corporation. *Aronoff,* 446 N.Y.S.2d at 370.

■ To overcome this "business judgment rule", a shareholder must show that "no person of ordinary sound business judgment would say that the corporation received fair benefit" in exchange for the challenged expenditure. *Id.* at 371. In other words, the expenditure will be upheld if ordinary business-persons could differ on the sufficiency of benefit received. *Id.* "The motives or personal benefit to the directors is also a relevant concern. The objecting stockholders must show that the directors must have acted with an intent to serve some outside interest, regardless of the consequence." *Id.* This may be inferred if there is a great disparity between the expenditure and benefit. *Id.* "[T]he actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith." *Stern,* 924 F.2d at 476.

Several areas are left to the business judgment of corporate directors.

Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and

unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.

*Auerbach v. Bennett,* 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 926, 393 N.E.2d 994, 998 (1979) (quoting *Pollitz v. Wabash R.R. Co.,* 207 N.Y. 113, 124, 100 N.E. 721 (1912)). This action involves the appropriation of corporate funds. The business judgment rule applies.

■ In examining a claim of waste of corporate assets, the Court will first look at the benefit to the corporation of the challenged expenditures and the purpose of those expenditures. If the evidence indicates that Defendants have pursued an improper purpose or that the corporation has not received fair benefit, then the motives behind the corporate directors' decisions will be examined.

### A. *Benefit.*

■ The Court shall first examine the issue of GE/PAC's benefit to GE. The liability of corporate directors for a claimed waste of corporate assets cannot be sustained in the absence of loss to the corporation. 15 N.Y.Jur.2d, Business Relationships § 1006 (1981) (citing *Imberman v. Alexander,* 16 Misc.2d 330, 184 N.Y.S.2d 801, 803, 805 (Sup. Ct.1959)); 19 C.J.S. Corporations § 493 (1990).

■ Defendants argue that Plaintiff cannot in good faith argue that GE does not receive fair benefit in exchange for its support of GE/PAC. They contend that there is no genuine dispute as to these benefits. This absence of evidence in support of Plaintiff's case is reflected in the admissions of Plaintiff and his expert. For example, Plaintiff answered affirmatively a question as to whether the "pro-incumbent proclivity of the GE/PAC is explained by its reason for existing, namely to promote the interests of the General Electric Company and its shareholders."

Transcript of the Deposition of Philip M. Stern, February 7, 1992, pp. 59–60, 62–63 ("Deposition of Stern"). Plaintiff also answered a question during his deposition indicating that GE receives benefits greater than the contributions made to candidates by GE/PAC. *Id.* at 67–68.

Furthermore, in the deposition of Plaintiff's proposed expert, Larry Makinson, he indicated that GE/PAC has been effective in building good will with members of Congress. Transcript of the Deposition of Larry Makinson, March 25, 1993, pp. 67 ("Deposition of Makinson"). In light of these statements, Defendants claim that Plaintiff cannot argue that no person of sound business judgment could find that GE receives fair benefit in exchange for its expenditures in support of GE/PAC.

In further support of this contention, Defendants point to the testimony of their witnesses. These witnesses state that the benefits derived from support of GE/PAC include the involvement and education of GE employees on government relations; the election of candidates open to GE's position on various issues; and the maintenance and improvement of GE's relationship with members of Congress. Defendants maintain that testimony to this effect is uncontroverted.

While the existence of benefit is a question of fact which might preclude summary judgment, here there is no genuine issue in dispute. Plaintiff admittedly is unable to show an absence of benefit to GE resulting from its support of GE/PAC's operation. The lack of a showing necessary to the claim of waste is sufficient to defeat Plaintiff's action provided that the benefit does not flow from an improper use or purpose.

### B. *Purpose.*

Plaintiff counters that even if there is benefit to GE, GE/PAC has been used for improper purposes or in an unlawful manner and thereby resulted a waste of GE's assets.[7] Plaintiff concedes that the use of GE/PAC

---

7. The corporate expenditures by GE for the administrative support of GE/PAC have been held to be lawful under FECA by the Federal Election Commission, the U.S. District Court for the District of Columbia, and the Court of Appeals for the District of Columbia. *See Stern,* 921 F.2d 296 (D.C.Cir.1990). Plaintiff cannot argue that the challenged expenditures are contrary to federal law.

for "influence-buying" produces advantages for GE, but he also argues that this is not the result of "legitimate PAC operations." Plaintiffs' Reply Memorandum and Opposition to Cross–Motion, p. 11. Specifically, Plaintiff claims that GE/PAC has operated outside of the purposes stated in its Articles of Association, and that any benefit flowing therefrom should be disregarded.[8]

Plaintiff claims that Defendants are liable for their alleged "promotion of the deliberate disregard of the Articles of Association." Plaintiffs' Reply Memorandum, pp. 35–36. Plaintiff cites to *In re Leasing Consultants Inc. v. Feldman*, 592 F.2d 103, 109–10 (2d Cir.1979), *In re Wedtech Corp.*, 88 B.R. 619, 624 (Bankr.S.D.N.Y.1988), and *Miller v. American Tel. & Tel. Co.*, 507 F.2d 759, 763 (3rd Cir.1974) as primary support for his contention that directors are liable for this sort of "violation". While these cases do involve the improper diversion of assets, these diversions were for *criminally illegal* purposes. Defendants argue that the articles of association at issue here are not comparable to criminal laws in either "form or function," Defendants' Reply Memorandum, p. 9, and that therefore the reasoning of the cases cited by Plaintiff should not be extended to this case. This Court agrees. The violation of a state's penal statutes is not analogous to violations of an unincorporated organization's articles of association. It would be a stretch to find such a private, internal agreement created by the association analogous to criminal statutes created by a legislative body addressing public offenses and offenses against the state.

Plaintiff also claims that violations of GE/PAC's Articles of Association are actionable in their own right against the corporation. In support, Plaintiff cites to cases involving violations of corporate charters. *See* Memorandum in Support of Plaintiffs' Motion, p. 22 n. 2. However, the GE/PAC Articles of As-

sociation concern an unincorporated association of employees rather than a corporation governed by articles of incorporation or by-laws. Violations of articles of incorporation, charters, or by-laws are not at issue here. Analogies to such violations are, just like analogies to criminal statues, inapplicable to the instant action.

Plaintiff next cites to the New York Court of Appeals decision in *Gem Music Corp. v. Taylor*, 294 N.Y. 34, 38, 60 N.E.2d 196 (1945), for the proposition that the articles of an unincorporated association are "binding upon all its members." Plaintiff claims that the activities of GE/PAC contravene the purposes stated in its Articles of Association. However, the Court agrees with Defendants that any claim regarding violation of the articles of a political action committee would have to be directed to that committee. *Gem Music* involved a lawsuit by members of an unincorporated association against that association's directors and a group of individual corporations. Plaintiffs alleged that defendants violated the articles of the association. In upholding the cause of action against the association's directors, the Court of Appeals also upheld the dismissal of corporate defendants which had designated representatives to the association finding that no cause of action was stated against them. *Gem Music*, 294 N.Y. at 38–39, 60 N.E.2d 196. The committee has ultimate control over its operation and is liable for its own activity. Here, too, no cause of action exists against GE and its directors for GE/PAC's alleged breach of its articles of association.

Finally, Plaintiff has not shown the specific purpose set forth in the Articles to be unserved. Article II states that the goals of GE/PAC are met by "contributing funds to support candidates for federal office." See page 74 of this Opinion, *supra*. The contribution of funds by GE managers to support

---

8. Plaintiff also alleges that Defendants have deducted the administrative expenses of GE/PAC in violation of Internal Revenue Code § 162(e)(2) (1992), and that any benefit flowing from this misuse should be disregarded. However, Plaintiff's complaint alleges only improper use of GE/PAC in violation of its Articles of Association and challenges only the benefit claimed to flow from this alleged violation. It does not mention the

I.R.C. Neither the benefit alleged by Plaintiff to have resulted from an improper purpose nor the benefit claimed by Defendants is in the form of tax savings. If such savings illegally exist, they are not the direct result of the operation of GE/PAC. *See* Subsection A, *supra*. No separate cause of action for violation of the I.R.C. has been stated in the complaint.

political candidates is the specific objective of GE/PAC where such is permissible under federal law. *See Gem Music,* 294 N.Y. at 39, 60 N.E.2d 196 ("articles are to be read in the light of the rule which limits the significance of general words in an instrument to the specific objects elsewhere set forth therein"). GE/PAC lawfully accomplishes its objective.

Plaintiff believes the individual citizen's power over the political process is usurped by political action committees. However, the alleged tactics of GE/PAC are valid under federal law, benefit the corporation, and do not violate the specific purpose of the political action committee. Although espoused in an antitrust case, the Supreme Court has recognized the right of interest groups to lobby government:

> It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves.... [D]isqualify[ing] people from taking a public position on matters which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them.

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 139, 81 S.Ct. 523, 531, 5 L.Ed.2d 464 (1961) (an interest group's effort toward obtaining governmental action, despite its possible anticompetitive purpose, is not illegal under the Sherman Act).

Plaintiff is wholly unable to provide specific evidence in support of essential elements of his claim of corporate waste. He has not shown a lack of benefit resulting from the expenditure of assets in support of GE/PAC. He has not shown the purpose of GE/PAC to be improper or even unmet. The lawful and beneficial activities of GE/PAC cannot be said to result in a waste of corporate assets.[9] There is no genuine issue as to any material

facts in support of Plaintiff's case, and Defendants are entitled to judgment as a matter of law. Summary judgment is granted in favor of Defendants.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is denied. Defendants' cross-motion for summary judgment is granted.

It is SO ORDERED.

---

9. The Court need not reach the issues of fraud and bad faith as they relate to the claim of waste of corporate assets. A claim of lack of due care is not the same as a claim of waste. *See Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264, 279 n. 9 (2d Cir.1986). Plaintiff was granted leave to replead claims of waste of corporate assets. While Defendants' motives are relevant to the business judgment rule, the essential elements of waste have not been established.